**In the Matter of ITEMLAB, INC., Debtor.
No. 60–B–640.**

United States District Court
E. D. New York.
June 27, 1961.

William J. Rudin, Mineola, N. Y., Referee in Bankruptcy.

Louis P. Rosenberg, Brooklyn, N. Y., for debtor.

Binder, Silber & Stangler, West Hempstead, N. Y., for respondent; Carl A. Binder, West Hempstead, N. Y., of counsel.

McLanahan, Merritt & Ingraham, New York City, Appearing specially for debtor and generally for Dutch American

Mercantile Corp., Judgment Creditor; Emanual Becker, New York City, of counsel.

BARTELS, District Judge.

Petition to review an order, dated March 16, 1961, by Hon. William J. Rudin, Referee in Bankruptcy, denying a motion by the above debtor-in-possession to declare that a certain chattel mortgage executed jointly by the debtor, Itemlab, Inc. (herein "Itemlab"), and Itemco, Inc., a corporation not a party to this proceeding, in favor of Eighteenth Avenue Land Co. (herein "the lender"), is not a valid lien. Annexed to the mortgage was a consent by stockholders purporting to own two-thirds of the stock of Itemlab and a certificate of the president and secretary reciting such consent, although in fact the mortgage had not been consented to by the two-thirds majority required by New York statute (Stock Corporation Law, McKinney's Consol. Laws, c. 59, § 16). The referee having found that the mortgage was a valid lien on Itemlab's assets, the debtor-in-possession seeks review.

Facts

On August 19, 1960 Itemlab, jointly with Itemco, executed a note and chattel mortgage payable to the lender in the principal amount of $47,000, bearing interest at the rate of $1,925 per month, and payable four months after execution [1]. Many other documents were annexed to the mortgage in addition to the spurious consent of the stockholders and the certificate of officers of Itemlab including (i) an identical stockholders' consent and certificate of consent executed by officers of Itemco [2], (ii) copies of identical resolutions of Itemco and Itemlab stating that at a stockholders' meeting on October 15, *1959* each corporation had been authorized to "refinance its existing liabilities to the extent of $100,000" and to execute any chattel mortgage that might be required to achieve such financing, which resolution the secretary of each corporation certified was "now in full force and effect", and (iii) a letter by counsel to the two corporations stating that in his opinion the mortgage was binding and that the consent of the stockholders to the execution of the mortgage was not required.

Aside from the stockholders' consent and the certificate of officers, the additional documents seem superfluous and ordinarily are not required as part of a mortgage except in a dubious case. Added to this collection were two further instruments which were included for the purpose of effectuating the chattel mortgage and which on their face charge the lender with notice that Itemlab owned all of the property being mortgaged and that Itemco was a joint mortgagor in name only. These papers were (i) an affidavit of Itemlab's president which recited that Itemlab was *"the sole and only owner* of the goods and chattels described and more specifically enumerated in *the schedule* hereto annexed and made part hereof"* (Emphasis added) and (ii) two schedules annexed to the mortgage which clearly indicate that Itemlab was the owner of all of the pledged assets. There was not, as the said affidavit stated, one schedule but two, the first, captioned "Schedule A" and bearing the designation "Items Purchased By Item Lab Inc From Outside Sources" and the second, captioned "Schedule B" and bearing the designation "Equipment Purchased By Item Lab Inc. From Itemco". These schedules leave no doubt as to the ownership of the assets. Strangely enough, there also was annexed to the joint mortgage an affidavit by the president of Itemco stating that *Itemco* was the sole and only owner of the assets described "in the schedule". This was patently inaccurate and would cause an ordinary reasonable man to make inquiry.

With the security papers in this condition, the lender advanced not $47,000 but $42,820 in two different checks, one for

---

1. The actual consideration paid was $42,-820. The interest rate of the loan on a per annum basis exceeded 58%.

2. No claim is made that such consent and certificate were false.

$20,000 and the other for $22,820, both checks being payable to counsel "as attorney for Itemco, Inc. and Itemlab, Inc." It appeared at the hearing that Itemlab received only $18,500 in cash and that Itemco received a like amount [3]. As previously stated, there had not in fact been a consent by two-thirds of the stockholders of Itemlab to this joint chattel mortgage as set forth in the certificate executed by the president and secretary.

The learned referee found that the October 15, 1959 resolution of Itemlab's stockholders was in full force and effect as of the date the instant mortgage was executed [4], that the mortgage was valid because under Section 17 of the New York Stock Corporation Law the certificate of officers with respect to the stockholders' consent was "conclusive" in favor of the lender, remarking that the " * * * best evidence of its good faith is the fact that it paid out $42,820 upon the security of the mortgage", and that the debtor-in-possession had failed to establish "by competent proof that the lender did not act in good faith in that it knew the resolutions to be inaccurate and that the debtor did not receive a fair value for the mortgage."

The pertinent provision of Section 17 states:

" * * * Whenever hereafter, in compliance with any law of this state, the officers of any corporation shall have made and filed and recorded a certificate that the execution of a mortgage hereafter made by the corporation has been duly consented to by stockholders, such certificate shall be *conclusive evidence as to the truth thereof*, in favor of any and all persons who in good faith shall receive or purchase, *for value*, any obligation purporting to be secured by such mortgage. * * * " (Emphasis added.)

The crux of the matter then, is whether the lender in this case (a) acted in good faith and (b) paid value. These two requirements shall be treated in inverse order.

### Payment of Value

The Court has a grave doubt on the existing state of facts as to whether the lender paid value to Itemlab for the mortgage of its assets in view of the fact that Itemlab received only $18,500 under the circumstances above related in return for a note and mortgage for $47,000.

The learned referee determined that since the attorney who received the checks had apparent authority to do so, the lender could not be charged with any subsequent diversion of the consideration which it had paid. This is a clearly erroneous conclusion because it appears from the facts that the attorney's apparent authority was to act as agent for *both* corporations as is evidenced by the manner in which the checks were made payable, and it is thus obvious that his authority encompassed the distribution of at least part of the funds received to a non-pledgee. In fact, there would have been no object in Itemco executing the joint obligation as well as the joint mortgage and the attorney acting as agent for Itemco, if this were not true. Under such facts the lender is charged with knowledge, not of a subsequent diversion, but of notice of a probable failure of Itemlab to receive the full

---

3. The record does not reveal the disposition of the remaining $5,820.

4. This finding was not necessary in view of the referee's rationale that Section 17 of the Stock Corporation Law insulated the lender from any defect in the consent to the mortgage. However, it should be noted that this finding is vulnerable since the resolution confers authority only for a mortgage connected with the refinancing of debts existing as of October 15, 1959 and since Itemlab had previously executed a mortgage pursuant to the authority of the resolution to secure a loan from Blanmill Realty Corp., which was satisfied as part of the now disputed transaction. " * * * A mortgage executed to secure a specific debt ceases to have any force after the payment of that debt, and cannot be revived to secure a new obligation without a new grant." Karasik v. People's Trust Co., D.C.N.Y.1917, 252 F. 324, 332.

amount of the loan for which it had provided all the security. Eliminating the chattel mortgage from the transaction, there remains a joint note executed by two corporations which presumably would share the proceeds thereof. Even under this hypothesis, the validity of the note would be subject to attack unless it complied with the provisions of Section 19 of the Stock Corporation Law. No evidence upon this issue was adduced. Further, a joint note by two corporations is unusual and the resolution of authority should be specific. Here, however, a mortgage on the assets is also involved which presents the additional problem of whether value was paid to Itemlab for the mortgage. From the present state of the record the Court concludes that the payments made by the lender did not constitute value and the referee's finding to the contrary was clear error. This failure deprives the lender of the protection of Section 17 and frees the debtor to invalidate the mortgage as having been made without requisite consent. Karasik v. People's Trust Co., supra, 252 F. at page 330.

### Good Faith

Intertwined with the question of value is the lender's good faith. Consideration of additional facts in the case casts a cloud upon the existence of this condition so necessary to the lender's protection.

■ Examining the form and substance of the transaction together with the supporting papers, the following facts were revealed to the lender: (1) Itemlab was the sole owner of the assets mortgaged, (2) Itemco's president executed an affidavit of ownership of the assets which was false, (3) Itemco was a party to the mortgage (as distinct from the note) without apparent justification except for the receipt of part of the proceeds of the loan, (4) Itemlab had previously executed a mortgage pursuant to the October 15, 1959 resolution submitted in support of its present authority, (5) two checks in different amounts were drawn to the order of one agent acting for both corporations and (6) neither corporation had advanced proof of authority to guarantee the obligations of the other. "No case has been cited to us, which, in point of facts, is even close to the one we are considering. It is the general rule, however, that when a party has notice of facts appearing in a recorded document, such as would put a prudent person upon inquiry, he is chargeable with the knowledge of such other facts, which, by diligent inquiry, he would have ascertained had he investigated." In re Greer College and Airways, 7 Cir., 1931, 53 F. 2d 585, 586. The lender may not be "permitted to close his eyes when he pleases upon all sources of information, and then excuse his ignorance by saying that he does not see anything. In criminal as well as civil affairs, every man is presumed to know everything that he can learn upon inquiry, when he has facts in his possession which suggest the inquiry." United States v. Railway Employees' Dept. A.F.L., D.C.Ill.1922, 283 F. 479, 493; see also Canal Bank v. Hudson, 1884, 111 U.S. 66, 81, 4 S.Ct. 303, 28 L.Ed. 354. The lender must therefore be charged with knowledge of the contents of the documents and the facts above stated. Upon this record the referee found that the "best proof" of the lender's good faith was the advance of $42,820 in reliance on the validity of the mortgage. This is error. The advance is proof only of the lender's faith in or expectation of repayment. From the tenor of the transaction it may reasonably be inferred that the lender was sufficiently cognizant of the irregularity instinct therein and that the lender exacted compensation regarded as being necessary for the risks inherent in the venture.

■ The terms "good faith" and "notice" are not synonymous although they are interrelated. While "good faith" may be equated to an honest belief (which is subjective), such a belief cannot legally co-exist with positive notice of an adverse or conflicting claim based upon objective manifestations. Notice of patent irregularities and probable illegalities surrounding the transaction in

this case, including the absence of value, were such as to seriously impugn, if not eliminate, the good faith of the lender. In the absence of good faith the lender is not in a position to seek the protection of Section 17 even though it did not know that two-thirds of the stockholders of Itemlab had not consented to the joint mortgage.

### Fraudulent Conveyance

 Having determined that the lender had acted in good faith and paid value and that therefore Section 17 protected it, the learned referee did not turn his attention to the possible existence of a fraudulent conveyance. Section 273 of the Debtor and Creditor Law of New York, McKinney's Consol.Laws, c. 12 provides:

> "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors *without regard to his actual intent* if the conveyance is made or the obligation is incurred without fair consideration." (Emphasis added).

If the conveyance rendered Itemlab insolvent the absence of fair consideration, without regard to intent, would under this test throw the transaction within the condemnation of the section. See Feist v. Druckerman, 2 Cir., 1934, 70 F. 2d 333, 334–335; In re Locust Bldg. Co., Inc., 2 Cir., 1924, 299 F. 756, 764. Upon any reconsideration of the validity of the mortgage, evidence as to the adequacy of consideration and the financial condition of Itemlab at the time the mortgage was executed should be considered.

### Conclusion

Upon the record presented it is the opinion of this Court that the referee's findings of fact were not justified by the evidence and were clearly erroneous. Since, however, additional issues and queries were raised in this opinion which may be subject to further inquiry and with respect to which no evidence was elicited at the hearing, the matter will be remitted to the referee to afford both parties an opportunity to adduce such evidence as they deem advisable either in support of or in opposition to the Court's conclusions.

The decision of the referee is reversed and the matter recommitted for further proceedings in accordance herewith.

Settle order within five (5) days upon two (2) days' notice.