**Isidore CHERNO, Trustee-Appellant,**

**v.**

**DUTCH AMERICAN MERCANTILE CORPORATION, Creditor-Appellee.**

**In the Matter of ITEMLAB, INC., Bankrupt.**

**No. 74, Docket 29812.**

United States Court of Appeals
Second Circuit.

Argued Sept. 23, 1965.

Decided Nov. 9, 1965.

Jacob M. Goldman, Mineola, N. Y., for trustee-appellant.

Emanuel Becker, New York City (McLanahan, Merritt & Ingraham, New York City, on the brief), for creditor-appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The Trustee in Bankruptcy appeals from a judgment of the District Court which reversed an order by the Referee in Bankruptcy which rejected the claim of the appellee, Dutch American Mercantile Corporation, that it was a preferred lien creditor as an equitable assignee or equitable lienor or as the beneficiary of a constructive trust. We reverse the judgment below and let stand the order of the Referee.

On October 23, 1959, Blanmill Realty Corp. loaned $87,000 to Itemlab, Inc., evidenced by Itemlab's note in that amount and secured by a chattel mortgage, which was duly filed in the office of the Town Clerk of the Town of North Hempstead, New York, in compliance with the provisions of § 230 of the New York Lien Law. Thereafter, when Itemlab was in default on its note to Blanmill and in need of additional cash, Itemlab, Blanmill and Dutch American entered into a written subordination agreement which provided that Dutch American would loan Itemlab $50,000, on its note to Dutch American in that amount, with the express understanding that Blanmill's claim against Itemlab "shall * * * be subject and subordinate in lien to the lien of said note for $50,000," and that "no part of the indebtedness * * * shall be paid [to Blanmill] until all sums due and owing to Dutch American Mercantile Corp. shall have been paid and disposed of." Dutch American took no chattel mortgage from the bankrupt to secure its loan nor did it request or receive an assignment of Blanmill's note or chattel mortgage, nor was the subordination agreement filed or recorded.

Itemlab defaulted on its note, and Dutch American commenced an action to recover the amount due. While that case was pending, Blanmill, as a part of a scheme to get additional cash for Itemlab, executed and filed a satisfaction of the chattel mortgage in spite of the fact that no part of the mortgage debt had ever been paid. At the same time that the satisfaction of mortgage was filed, and in furtherance of the scheme, a new chattel mortgage on the same property was made to secure a note for a loan in the amount of $47,300 and delivered to an innocent lender, the 18th Avenue Land Corp., which recorded it. The loan by 18th Avenue was made in reliance upon the fact that there was no record encumbrance upon the chattels at the time the loan was consummated. Dutch American had no knowledge of this transaction and was not a party to it; moreover, the 18th Avenue Land Corp. had no notice or knowledge of Dutch American's interest in the matter, actual or constructive, or that Blanmill's release of

Itemlab's mortgage to it was in any way violative of an agreement with Dutch American. Itemlab was insolvent at the time it gave the chattel mortgage to 18th Avenue Land Corp., and, in the subsequent bankruptcy proceedings, the trustee succeeded in having this chattel mortgage declared invalid.[1] The 18th Avenue Land Corp. is, therefore, an ordinary creditor of the debtor in bankruptcy.

The Referee denied Dutch American's petition for an order declaring it to have a first lien on the proceeds from the sale of the chattels mortgaged to Blanmill, but the District Court reversed the Referee's order. The Referee merely assumed *arguendo* that Dutch American held an equitable assignment of the Blanmill chattel mortgage, but decided that because it had not been filed, it did not have priority over the claims of the common creditors in bankruptcy. The District Court concluded there was, in fact and law, an equitable assignment, that the law of New York did not require Dutch American to record it and therefore upheld the appellee's claim of priority in the proceeds from the sale.

The judgment of the District Court and the position of the appellee in defending that judgment on this appeal take the position (a) that the subordination agreement operated as an equitable assignment of Blanmill's mortgage on the chattels, which thereby became security for the Dutch American bare note from Itemlab, Inc., and (b) that Blanmill's execution and filing in the Town Clerk's records of a satisfaction of that mortgage did not release or destroy the mortgage as security for Dutch American's note, even though innocent third persons had been misled to their damage by Dutch American's failure to file or record the subordination agreement as a claimed assignment.

█ In holding that the subordination agreement operated to create an equitable assignment, the court below principally relied upon National Live Stock Bank of Chicago v. First National Bank of Geneseo, 203 U.S. 296, 27 S.Ct. 79, 51 L.Ed. 192 (1906). In that case First National was assignee under a written assignment of a note, secured by a chattel mortgage on cattle. This assignment was not recorded. The assignor-mortgagee thereafter improperly executed and recorded a release of the mortgage, though the debt had not been paid to the assignee. In reliance on the apparent unencumbered state of the cattle, and without knowledge of the assignment to First National, National Live Stock made a loan to the owner of the cattle, secured by a mortgage on the herd. These transactions took place in Kansas. Later the owner, who was in default on the loans, removed the cattle to Oklahoma. Both banks claimed the right to the cattle. The decision of the Court in favor of First National, as assignee of the initial mortgage note, held, (1) that the assignment of a note by a chattel mortgagee transferred the mortgage with it and (2) that the federal courts must look to state law to see if that assignment must be recorded. The present case is distinguishable from National Live Stock Bank because the subordination agreement does not include any assignment to Dutch American of the note from Itemlab to Blanmill or of the mortgage securing it.[2]

1. This determination was presumably made in an action brought under § 70, sub. e of the Bankruptcy Act. See, In re Itemlab, Inc., 197 F.Supp. 5 (E.D.N.Y.1961), appeal dismissed, Dutch American Mercantile Corp. v. Eighteenth Ave. Land Co., 302 F.2d 636 (2d Cir. 1962).

2. The agreement provided that " * * * in consideration of the premises and to induce said party of the first part [Dutch American] to accept said note and lend the said $50,000.00 * * * the said parties of the third [Blanmill Realty Co.] and fourth parts [five named individuals] hereby covenants [sic] and agree * * * that all obligations of the parties of the second part to the parties of the third and fourth parts be and shall continue to be subject and subordinate in lien to the lien of said note for $50,000.00 * * * and further that no part of the indebted-

The essence of the rule that declares that an assignment of the debt also transfers the chattel mortgage is that the security cannot exist apart from the debt for which it is given. Thus, the proposition that Dutch American received an equitable assignment must find support in the express terms of the subordination agreement or the proposition fails.

█ Blanmill agreed to do no more than defer its claim until the Dutch American note was paid with interest. Absent a manifestation of intent to make an assignment of the chattel mortgage by the terms of the agreement or otherwise, a subordination agreement does not constitute an equitable assignment of the security. In re Dodge-Freedman Poultry Company, 148 F.Supp. 647, 650–651 (D.C. N.H.1956), affirmed without opinion, 244 F.2d 314 (1st Cir. 1957).

The appellee argues that it is not at all necessary that the subordination agreement contain words of assignment because, it claims, a subordination agreement in itself and of its own force creates an equitable lien or a constructive trust. In support of this proposition the appellee relies upon an article in 70 Yale Law Journal 376 at 395 (1961), the following portion of which it quotes:

"Probably the most misunderstood conceptual element of subordination agreements concerns the question of the necessity of including an assignment of the subordinated debt in the agreement. * * * In all of the subordination cases, except Matter of Goodman-Kinstler Cigar Co. [32 Am.Bankr.R. 624 (S.D.Cal.1914)], the subordination agreement was given full force and effect, and in none of them did the agreement contain an assignment of the subordinator's claim. Moreover, in the Handy-Andy case [2 F.Supp. 97 (W.D. La.1932)] the need for an assignment was adverted to and rejected.

Indeed, an actual assignment of the subordinated debt as collateral security for the senior debt oviates the need for the subordination itself * * *"

But all that this says is that it is not necessary to couple an assignment with a subordination agreement to make the latter effective. The usual subordination agreement simply gives priority or precedence of lien right and debt payment to a junior indebtedness over a senior but subordinated obligation. It does not in and of itself assign to the junior creditor or encumbrancer the senior debt or the evidence of the senior debt or the security covering it. Subordination is something quite apart from an assignment of an obligation or its accompanying security, and we find no authority for the proposition urged by the appellee.

To return to National Live Stock Bank of Chicago v. First National Bank of Geneseo, supra, on which the court below relied, the Supreme Court held that the law of Kansas applied on the question of whether or not the failure by the First National Bank, as assignee of the mortgage given in the first instance, to record the assignment gave priority to the later recorded mortgage given to National Live Stock Bank. It concluded that where, as in the case before it, the note assigned to First National Bank was negotiable, it was the policy of Kansas to give the securing mortgage the same facility of transfer as the note itself.

There is nothing in the record of the present case to indicate that the mortgage note to Blanmill was negotiable; and the policy of the State of Kansas with regard to an unrecorded mortgage following the negotiable note it was, given to secure, is exactly contrary to the intent and purpose of the New York recording act, which is applicable to this case.

ness of the parties of the second part to the parties of the third and fourth parts [sic] shall be paid until all sums due and

· owing to the party of the first part shall have been paid and disposed of."

■ The New York statute, Lien Law, McKinney's Consol.Laws, c. 33, § 232–a,[3] declares that an assignment of a chattel mortgage "shall be filed, prior to the filing of a satisfaction thereof." Blanmill duly executed and filed a satisfaction of the chattel mortgage and it appears that the 18th Avenue Land Corp. relied upon the record of prior liens in taking the second chattel mortgage as security for its loan to Itemlab. The purpose of the New York chattel mortgage recording statutes is to protect present and prospective creditors who would not know, but for the record of liens, whether or not the debtor's property was encumbered. Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 662 (2d Cir. 1940); Wolf v. Aero Factors Corporation, 126 F.Supp. 872 (S.D.N.Y.1954), affirmed 221 F.2d 291 (2d Cir. 1955); Mack v. Phelan, 92 N.Y. 20 (1883); In re General Assignment for Benefit of Creditors of Norma Footwear Corp., 2 A.D.2d 24, 153 N.Y.S.2d 80 (1st Dept.1956).

The appellee's reliance upon In re Industrial Sapphire Mfg. Co., 182 F.2d 589 (3d Cir. 1950), as a direct holding that it was not required to file the subordination agreement, as an assignment, is misplaced. Industrial Sapphire was, in terms of § 232–a, a completely different case. No filing of a satisfaction of lien was involved and the decision is not apposite to the issues in this case in which the alleged assignment was not filed "prior to the filing of a satisfaction" of the chattel mortgage.

■ Although the appellee places great reliance upon the Industrial Sapphire case, it should be noted that in that case there was a written assignment of the mortgage and that no one had been misled by the failure of the assignee to record it. In distinguishing Fahlbusch v. Consumers Discount Corp., 159 Misc. 568, 288 N.Y.S. 511 (1936), decided before the enactment of § 232–a, Judge

Goodrich in the course of the Industrial Sapphire opinion said,

"Further, it involves the rights of the purchaser over the mortgagee, who had repossessed the collateral after executing an assignment which was not filed. The assignee lost out because his failure to file misled the purchaser into believing that the mortgagee had the right to dispose of the collateral." 182 F.2d 589, at 590.

It was certainly not intended by the subsequent enactment of § 232–a to provide a loophole through which persons relying on the land and personal property records could be misled.

■■ Section 230 of the Lien Law provides that a chattel mortgage which is not filed in accordance with the provisions of the section "is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith * * *." The trustee became a judicial lien creditor of the mortgagor-bankrupt's estate as of the date that the petition in bankruptcy was filed, Lewis v. Manufacturers National Bank of Detroit, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), and could have defeated the lien of an unfiled chattel mortgage. The same result must logically follow where the statutory requirements for filing an assignment, legal or equitable, have not been met. Strict compliance with the recording statutes is required. In re National Browne Co., Inc., 151 F.2d 595, 596 (2d Cir. 1945); Wolf v. Aero Factors Corporation, supra.

If the law were to be interpreted as appellee claims, there would be provided an exception to the protective features of the recording act which would operate as an open inducement to fraud and deceit.

■ Moreover, to permit a self-styled equitable assignee or lienor, who had intentionally or through neglect failed to

3. Now repealed in connection with the enactment of the Uniform Commercial Code, of which superseding provisions are § 9–401 et seq.

file or record a proper instrument disclosing the interest assigned, to prevail over an innocent mortgagee of the chattels, where the loan had been made in reliance on the fact that the mortgaged property was free from record encumbrances, would violate § 60, sub. a(6) of the Bankruptcy Act which declares that it is "contrary to the policy of this section," which makes provision for preferred claims to recognize "equitable liens where available means of perfecting legal liens have not been employed."

██ Even putting aside any consideration of the effect of failure to comply with the recording act, there is, as opposed to the interests of third persons, insufficient evidence to support the appellee's claim to an equitable lien on the proceeds from the sale of the chattels. An equitable lien will arise where "an intention to create such a charge clearly appear[s] from the language and the attendant circumstances. Strict proof of such intention is required." Pennsylvania Oil P. R. Co. v. Willrock Producing Co., 267 N.Y. 427, 434–435, 196 N.E. 385, 387 (1935). The subordination agreement uses the word "lien" but there is no finding and no evidence to support a finding of the necessary intent to charge the specific chattels, which were subject to the Blanmill chattel mortgage, with payment of the Dutch American note, nor was there evidence of any attempt to create an assignment. See, In re Interborough Consol. Corp., 288 F. 334, 349, 32 A.L.R. 932 (2d Cir. 1923). Had an equitable lien been properly found to exist, the applicable law of New York in any event would defer the priority of such liens to subsequent legal liens of judgment creditors and, therefore, to the claims of the trustee in bankruptcy. Rosenbaum v. Century Indemnity Co., 168 F.2d 917 (2d Cir. 1948).

██ The appellee mentions, without any real discussion, the theory of constructive trust. It treats "constructive trust" as an alternative label for "equitable lien" and "equitable assignment" and claims, in effect, that the appellee should, to the extent of its claim, be declared to be the rightful owner of the chattel mortgage from Itemlab to Blanmill and that, by virtue of the mortgage, appellee should be held to be a secured creditor entitled to the proceeds of the sale of the mortgaged chattels.

> "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

Restatement, Restitution § 160 (1937) at 640; Scott on Trusts, Vol. IV, § 462 at 3103 (2d ed. 1956). The comment in the Restatement points out that a constructive trust, unlike an express trust, is not based upon a fiduciary relationship, although in both kinds of trusts one person holds title to property subject to an equitable duty to hold the property for or to convey it to another, where that other "has in each case some kind of equitable interest in the property." See also Scott, supra, § 462.4, § 462.5, § 474, § 521(4), § 521.4.

██ The theory of constructive trust is not applicable to this case because at no time has the appellee, Dutch American, as against the trustee in bankruptcy, had any equitable interest in the chattels or in the chattel mortgage from Itemlab to Blanmill, nor is there any proof that the trustee in bankruptcy now holds any money or property through which it is being unjustly enriched at the expense of Dutch American.

The appellee cites in support of its claim of constructive trust the case of In re Dodge-Freedman Poultry Co., 148 F. Supp. 647, (D.C.N.H.1956). In that case a plan of arrangement for Poultry Co. under a Chapter 11 proceeding in Bankruptcy had been voted and approved. Delaware Mills, Inc., an unsecured creditor, had an agreement with Harry Freedman, another unsecured creditor, which subordinated Harry Freedman's claim to that of Delaware Mills, Inc., and which provided that no payment was to be made from Poultry Co. to Harry Freedman until all amounts due Delaware Mills,

Inc., by Poultry Co. had been satisfied and paid. When distribution was ordered pursuant to the plan, Harry Freedman, who had a substantial shareholder interest in Poultry Co., the debtor, attempted to release or waive the dividend which was his distributive share, thus benefiting the debtor and avoiding the necessity of paying Delaware Mills, Inc., under the subordination agreement. Apparently the combined dividends payable to Harry Freedman and Delaware Mills, Inc., were not sufficient to satisfy Poultry Co.'s obligation to Delaware Mills, Inc., in full.

Judge Connor properly found that it was "well-settled practice in bankruptcy for courts to enforce agreements between creditors which provide for subordination in liquidation," that a constructive trust for the benefit of Delaware Mills, Inc., existed as to the dividend to be distributed to Harry Freedman and that the attempt by Harry Freedman to use the dividend for his own ends and purposes would violate the constructive trust. This issue was actually one only between Delaware Mills, Inc., and Harry Freedman. The trustee appeared only in the role of one looking for a windfall as a by-product of Harry Freedman's effort to benefit himself at the expense of Delaware Mills, Inc.

■ In the present case there is no doubt that if, at the conclusion of the bankruptcy proceedings in Itemlab, Inc., debtor, liquidation had been accomplished and a distributive dividend were ordered to Blanmill and Dutch American, as creditors, Dutch American, on the theory of constructive trust, could, to the extent of its claim, receive Blanmill's dividend under the subordination agreement and prevent Blanmill from taking it and using it for its own purposes. But Dutch American asserts that a constructive trust was imposed in its favor upon the chattels the moment Blanmill released its chattel mortgage without consideration. There is, however, no support for such a proposition in law or equity. To recognize such a claim would be manifestly unjust to other creditors, and particularly to 18th Avenue Land Corp., an entirely innocent chattel mortgagee, which is now an ordinary creditor. Dutch American at no time had an interest in or lien upon the chattels. Its so-called "security" was nothing more than a promise by Blanmill to apply no payment against the mortgage debt until Dutch American was paid in full. Blanmill breached that agreement, but breach of a contract concerning payment of a debt furnishes no basis for the finding of a constructive trust. Bogert, Trusts & Trustees, § 479 at 89 (2d ed. 1960). Dutch American could enforce the obligation against Blanmill and Itemlab as parties to the subordination agreement but not against other existing or subsequent creditors.

In the case of In re Geo. P. Schinzel & Son, 16 F.2d 289 (D.C.N.Y.1926), several creditors of Schinzel & Son signed an agreement not to press their claims and to permit the concern to pay future suppliers, while they, the old creditors, remained unpaid. This court held that there was a subordination agreement giving priority to the debts due the subsequent suppliers over the claims of the signing creditors. The opinion went on to say,

> "This, however, *did not affect such creditors as did not enter the agreement at all*. While it would have been quite lawful as against such for the bankrupt to create a lien or pledge for fresh advances, this was not done. On the contrary, the supplying creditors were content with the bankrupt's promise that it would take care of them first, a promise *good as against others who signed, but bad as against outsiders*. Had they intended anything more, they should have secured it *by some lien known to the law*. The result is that the petitioner here has a priority only as against those creditors who joined in the agreement." [Emphasis added.]

16 F.2d 289, at 289–290.

Likewise, Dutch American could have secured its claim by some lien known to law but did not. In the ordinary case, whether there is a subordination agreement or not, the release of a first lien, even if subordinated, enhances the position of the second lien by making it, by operation of law the first encumbrance. The reason why Blanmill's release of its mortgage did not benefit Dutch American in this way is entirely due to Dutch American's own neglect in failing to have Itemlab's note to it secured by a proper instrument, properly recorded. The law of New York is clear that even if Dutch American had held a proper second mortgage on the chattels, securing Itemlab's note, and failed to file it, the security would be good only between the parties and would be invalid against other creditors and a trustee in bankruptcy.

> "Every mortgage or conveyance intended to operate as a mortgage of goods and chattels * * * is absolutely void as against creditors of the mortgagor * * * unless the mortgage * * * is filed * * within ten days after the making thereof." Lien Law § 230.

Yet Dutch American, which did not even bother to seek a chattel mortgage, asks equity to transmute an unsecured note, plus a bare promise by another creditor to see that Dutch American was paid in advance of satisfaction of the creditor's own claim, into a preferred secured obligation. The adoption of such a construction of the law would be completely destructive of the intent and purpose of the recording act and cannot be seriously entertained.

Moreover, the authorities in discussing constructive trusts hold that the courts will not use this remedial device against the interests of bona fide purchasers. Restatement, Restitution § 172 at 691; 4 Scott on Trusts, § 474 at 3141. The 18th Avenue Land Corp. gave full value for its mortgage on the chattels as an innocent purchaser without knowledge. Even though its security position was lost because of Itemlab's insolvency at the time the mortgage loan was made, it was not enjustly enriched, and no constructive trust in favor of Dutch American could be held to prevail over 18th Avenue Land Corp.'s interest as a creditor in the debtor's estate. Under § 70, sub. e(2) of the Bankruptcy Act the trustee stands in the shoes of 18th Avenue Land Corp., as a bona fide purchaser and, although 18th Avenue lost its secured status, the trustee could, for the benefit of the estate, have asserted 18th Avenue's defense against Dutch American's claim of constructive trust.

The claims of Dutch American that it either has an equitable assignment, an equitable lien or a constructive trust all invoke the equity powers of the court. Even if there were substance to the claims, which we are satisfied there is not, Dutch American would be barred from equitable relief because of the basic principle that he who seeks equity must do equity. By its failure and neglect to file or record any instrument giving notice of its claim of an equitable interest in the chattels, Dutch American enabled Blanmill and Itemlab to mislead 18th Avenue Land Corp. As far as innocent third persons were concerned, Dutch American left it within the power of Blanmill to release the mortgage at any time without notice of any claim of interest on the part of Dutch American, which had an equitable duty to give notice to third persons, who might be dealing with Itemlab, that it asserted an equitable claim against the chattels either directly or via Blanmill's mortgage. Having failed to do so, it cannot now assert in equity a priority over 18th Avenue Land Corp., who, the Referee found, "made its loan in reliance upon the fact that it had secured a release of the lien of Blanmill and without knowledge of the subordination agreement held by Dutch American Mercantile Corp.," nor can it gain a preference over other unsecured creditors and over substantial wage claims which accrued subsequent to the release of the Blanmill mortgage.

As we have concluded, however, that Dutch American never acquired any equi-

**156**

table interest in the chattels, it has no claim to the proceeds from the sale of the chattels by the trustee other than as an ordinary creditor.

The judgment of the District Court is reversed.