See also D.C., 197 F.Supp. 194.

In the Matter of ITEMLAB, INC., Bankrupt.

No. 60–B–640.

United States District Court
E. D. New York.

July 11, 1966.

McLanahan, Merritt & Ingraham, New York City, Petitioner, pro se. Emanuel Becker, New York City, of counsel.

Jacob M. Goldman, Mineola, N. Y., for Trustee. Ronald Lipshie, Mineola, N. Y., of counsel.

BARTELS, District Judge.

This is a petition to review an order of the Referee in Bankruptcy denying compensation to a law firm for services rendered by it as special counsel for the trustee in bankruptcy of Itemlab, Inc. in setting aside a chattel mortgage executed by the bankrupt in favor of 18th Avenue Land Company (18th Avenue).

I

In the Chapter XI proceeding of Itemlab, Inc. (Itemlab) the law firm of McLanahan, Merritt & Ingraham (McLanahan) first appeared as representing Dutch-American Mercantile Corporation (Dutch) and on November 15, 1960 filed a proof of claim in its behalf as an unsecured creditor in the amount of $52,-260.60 and thereafter attacked a chattel mortgage on Itemlab's property in favor of 18th Avenue. This mortgage was upheld by the Referee on March 16, 1961, whereupon McLanahan filed a petition in this Court to review said order in which McLanahan appeared specially for the debtor-in-possession and generally for Dutch although one Louis Rosenberg also appeared for the debtor. In that proceeding the Court reversed the Referee on June 27, 1961, indicating that the mortage was invalid but recommitting the matter for further proceedings in accordance with the opinion.[1]

On July 27, 1961, the debtor was adjudicated a bankrupt and on August 25, 1961 Dutch filed an amended proof of claim in the amount of $52,600.60 for monies loaned, asserting a lien against the assets of the estate through a chattel mortgage formerly held by Blanmill Realty Corp. (Blanmill) as security for a debt of $87,500 which had been subordinated to the claim of Dutch and which chattel mortgage was satisfied of record but not in fact at the time of the execution and delivery of the chattel mortgage to 18th Avenue. Thereafter, the trustee in bankruptcy petitioned the Referee for the appointment of McLanahan "as Special Counsel to the Trustee for the purposes of representing the Trustee in all proceedings in connection with the said appeal to the United States Circuit Court of Appeals [from the decision of this Court setting aside the 18th Avenue mortgage], and any subsequent proceedings before this Court, or any other Court with regard to the determination of the validity of the lien of the said mortgagee, for the reason that the said law firm, by reason of its active participation in the proceedings with regard to the said mortgage lien, is familiar with all of the facts and particulars with regard to the said mortgage claim and the said law firm has a great deal of experience and knowledge of the practice and procedure with regard to the proceedings both appellate and trial which will be involved in the obtaining of the final determination of the Trustee's rights with regard to the claim of the mortgagee, more particularly described above." Based upon this petition and the affidavit of Emanuel Becker of the McLanahan firm to the effect that said firm did not represent any interest adverse to the trustee nor had any relationship with the bankrupt except that "we represent Dutch-American Mercantile Corporation, who is a creditor of the * * * Bankrupt", the Referee on October 20, 1961 appointed McLanahan as such special counsel, "the compensation to be fixed by Court upon filing of proper application for allowance".

1. In re Itemlab, Inc., E.D.N.Y.1961, 197 F.Supp. 5.

Pursuant to this appointment, McLanahan proceeded to attack the validity of the 18th Avenue mortgage in the remanded proceeding before the Referee who after further hearings, again on May 16, 1963 rendered a decision upholding the mortgage. This decision was again reversed by this Court on October 1, 1963 and the appeal therefrom was unsuccessful, certiorari being also denied. It is admitted that if the 18th Avenue mortgage had been upheld it would have consumed practically all of the assets of the bankrupt estate which upon sale had produced approximately $80,000. After the 18th Avenue mortgage was thus set aside, McLanahan, representing Dutch, instituted a proceeding to direct the Trustee to pay Dutch $42,760 with interest as a preferred lien creditor, on the theory and basis outlined in its proof of claim filed August 25, 1961. This proceeding was finally determined on November 9, 1965 by the Court of Appeals in favor of the Trustee and denying Dutch's claim as a secured creditor.[2]

McLanahan having completed its task of invalidating the mortgage, the firm applied on January 4, 1965 for compensation and reimbursement pursuant to the terms of its appointment by the Referee. To this application the Trustee responded by a motion returnable on March 14, 1966 for an order disallowing the compensation upon the ground that McLanahan had failed to disclose "an interest adverse to the trustee". After a hearing, the Referee on May 12, 1966 granted the Trustee's motion for disallowance except to the extent of $346.30, representing disbursements. In his opinion the Referee stated that although both the Trustee and he knew that McLanahan were attorneys for Dutch they had no knowledge that Dutch intended to make a claim as a preferred lien creditor in the amount of $42,760 through its subordination agreement with Blanmill. He predicated his decision upon the failure of Becker to set forth in his affidavit in support of the application for McLanahan's appointment, the fact that McLanahan "represented an interest adverse to the trustee" which the Referee said was "violative of General Order 44". McLanahan, on the other hand, contends that (a) it had no interest adverse to the Trustee at the time of its appointment and (b) if there was such an adverse interest, it made all necessary disclosure in (i) Becker's affidavit showing that he represented Dutch and (ii) in Dutch's amended proof of claim dated August 25, 1961.

## II

The result in this case depends to a great extent upon the interpretation and application of the present General Order 44 which is a question of law to which the "clearly erroneous" standard does not apply.[3] It also depends on the determination of what constitutes an adverse interest and, if present, whether or not there was a disclosure of such interest. General Order 44 relating to the appointment of attorneys for trustees sets forth conditions under which attorneys may be appointed and provides, among other things, that "If without disclosure any attorney acting for a * * * trustee * * * shall have represented any interest adverse to the trustee * * * *in any matter upon which he is employed for such* * * * *trustee,* the court may deny the allowance of any fee to such attorney".[4] (Emphasis supplied)

The first and foremost question to be decided is whether McLanahan represented an interest adverse to the Trustee when it was employed by the Trustee

---

2. Cherno v. Dutch-American Mercantile Corporation, 2 Cir.1965, 353 F.2d 147.

3. See e. g., Tepper v. Chichester, 9 Cir. 1960, 285 F.2d 309, 312; In re Dejay Stores Inc., S.D.N.Y.1963, 220 F.Supp. 497, 500; In re Stewart, D.C.Oregon 1964, 233 F.Supp. 89.

4. 11 U.S.C.A. following § 53.

to set aside the 18th Avenue mortgage. An examination of the wording of General Order 44 discloses that it refers to an interest which is adverse in the matter upon which the attorney is employed by the trustee. The crucial issue is whether in the proceedings to invalidate the mortgage McLanahan's interest was adverse. It appears quite clear that unless the mortgage was set aside, there would have been no assets for distribution to either the Trustee or Dutch. From the very nature of the proceeding, their interests were necessarily identical. If they were to be successful in recovering any assets for the estate, they were compelled to unite in the task of removing this barrier. It is difficult to understand how it can be said that the interests of these two parties were adverse in this particular proceeding which is the only proceeding to which General Order 44 is applicable in this case. Under the circumstances it was natural and wise for the Trustee to solicit the aid of a firm which had been so successful in its past attack on the mortgage. The fact that Dutch claimed a preferred lien and therefore an interest adverse to the Trustee in the assets *after* the mortgage was removed did not make its interests adverse to the Trustee *before* the mortgage was removed. Community of interests should not be confused with a conflict of interest. Thus it is unnecessary to decide whether McLanahan made sufficient disclosure with respect to Dutch's claim to a preferred status through the Blanmill route after the invalidation of the mortgage.

■ Since the Referee relies heavily on the contention that McLanahan failed to disclose the nature of Dutch's preferred claim, some mention should be made of the actual facts. No claim is made by either the Referee or the Trustee that they did not know that McLanahan represented Dutch as a creditor. The complaint is that McLanahan failed to disclose that Dutch would make a preferred claim, predicated on the facts outlined in its amended proof of claim filed August 25, 1961. This claim was filed before McLanahan was employed but the Referee states that he cannot be charged with knowledge of the facts contained in all proofs of claim. While there may be some question about such disclaimer by the Referee, there is no doubt that the Trustee is not in the same position. As a person who is charged with the representation of all the creditors, it is his duty to "examine all proofs of claim and object to the allowance of such claims as may be improper." [5] Moreover, the Referee himself was fully acquainted with Dutch's claim predicated upon the subordination agreement by reason of his own decision of July 27, 1961 and this Court's decision of August 10, 1961[6] which analyzed the subordination agreement and which in fact was the only basis for its subsequent claim of a prior lien. The facts and documents before the Referee and the Court remained the same; the only change was that Dutch later claimed that additional legal consequences flowed therefrom entitling it to a priority. If pressed, this Court would be inclined to conclude that there was adequate disclosure of Dutch's interest which was subsequently adverse to the interest of the Trustee.

In denying McLanahan's application, the Referee relied upon cases decided before 1933 when the wording of General Order 44 was changed.[7] The old Order 44 required in sweeping terms that "there shall be submitted with this petition an affidavit of the person recom-

---

5. Section 47a(8) of the Bankruptcy Act, 11 U.S.C.A. § 75a(8).

6. In re Itemlab, Inc., E.D.N.Y.1961, 197 F.Supp. 194.

7. In re H. L. Stratton Inc., 2 Cir. 1931, 51 F.2d 984, cert. denied sub. nom. Jones &

Neuburger v. General Motors Acceptance Corp., 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576; In re Eureka Upholstering Co., Inc., 2 Cir. 1931, 48 F.2d 95; In re Rogers-Pyatt Shellac Co., 2 Cir. 1931, 51 F.2d 988.

mended showing that he is not employed by or connected with the bankrupt or any person having an interest adverse to the receiver, trustee or creditors". The present Order 44, on the other hand, is far less rigid. It does not by its terms require any affidavit from the proposed attorney although such requirement is, as a matter of practice, still adhered to. In other words, by a literal construction of the present Order 44, the attorney's adverse interest, if any, could be disclosed to the Referee in any prior proceedings or documents rather than only by the attorney's affidavit. But more important, however, is the fact that the limiting language in the present Order 44, "in any matter upon which he is employed for such * * * trustee," is not found in the old Order 44. Consequently, under the present Order 44 any disqualifying adverse interest of the attorney is restricted to the particular proceeding for which the attorney is engaged. These differences render inapposite cases decided before the 1933 changes in General Order 44. The only other case cited by the Referee is distinguishable on its facts.[8]

■ In conclusion, it should be added that the Court is fully cognizant that the purpose of General Order 44 is to prevent a dilution or maladministration of the assets of the estate by reason of an attorney's conflict of interest which might enable a creditor or creditors represented by him to secure an advantage or preference over other creditors of the estate. In this case it finds that the wording and spirit of General Order 44 have been observed and fairness and equity require that McLanahan, whose efforts produced most, if not all, of the assets distributable to the general creditors, should be rewarded by adequate compensation. Consequently, the case is remanded to the Referee for the purpose of awarding a fair and just compensation.

This is an order.

---

8. In re Woodruff, 9 Cir. 1941, 121 F.2d 152, cert. denied Lynch v. Jackson, 314 U.S. 652, 62 S.Ct. 99, 86 L.Ed. 522.