**In re HENZLER MANUFACTURING CORPORATION, Debtor.**

**John J. HUNTER, Trustee, Plaintiff,**

v.

**The OHIO CITIZENS BANK, et al., Defendant.**

**Bankruptcy No. 83–00193.**
**Adv. No. 83–0354.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 6, 1984.

John J. Hunter, Toledo, Ohio, trustee.

Marvin A. Robon, Barkan & Robon, Toledo, Ohio, for Ohio Citizens Bank.

Verne K. Armstrong, Asst. U.S. Atty., Toledo, Ohio, for United States.

Stuart W. Cordell, E. Terry Warren, Ashtabula, Ohio, for MFG.

Mark C. Abramson, Toledo, Ohio, for petitioning creditors.

Theodore Gersz, Toledo, Ohio, for debtor.

## MEMORANDUM AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon the Trustee's motion for summary judgment as against defendant Molded Fiber Glass Companies ("MFG"). The parties having stipulated to the relevant facts, the Court finds the Trustee is entitled to judgment as a matter of law.

## FINDINGS OF FACT

In relevant part, the parties have submitted the following stipulation of facts:

By a Purchase Agreement dated August 9, 1977, MFG sold certain equipment and assets to the Henzler Manufacturing Corporation ("Henzler") for a total purchase price of $250,000.00. The price was paid one-half in cash and the balance by a five year promissory note from Henzler to MFG for $125,000.00. The Note was secured by a Security Agreement dated August 30, 1977, by which MFG received a security interest in Henzler's equipment. MFG perfected that security interest by filing UCC financing statements with the Ohio Secretary of State and the Lucas County Recorder's Officer on September 21 and September 14, 1977, respectively. MFG then assigned the Note to one of its lenders as security for a loan. That loan was subsequently paid, and the security returned to MFG.

In order to finance an expansion of its building, Henzler sought an SBA loan through Ohio Citizens Bank ("Ohio Citizens"). Before making the loan, Ohio Citizens requested MFG and its lender to limit the security interest in Henzler's assets to the declining balance of the Note between MFG and Henzler. MFG and its lender agreed. By that Agreement, Ohio Citizens acknowledged that MFG had a superior right to the assets by virtue of its priority security interest. Nowhere did the Agreement condition MFG's superior right as between MFG and Ohio Citizens or the continuity of perfection of MFG's security interest in Henzler's equipment.

MFG's perfected security interest in Henzler's equipment lapsed in September, 1982. Henzler filed a chapter 7 petition on February 2, 1983.

## DISCUSSION

MFG having stipulated that its perfected security interest in Debtor's equipment lapsed in September of 1982, the issue in this proceeding is the effectiveness of MFG's unperfected security interest as against the trustee in bankruptcy. .

The Trustee has argued that, by virtue of his "strong arm" powers under § 544(a) of the Bankruptcy Code, MFG's security interest in the Debtor's property is voidable. This Court agrees.

Section 544(a) of the Bankruptcy Code provides, in relevant part, as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

Thus, under § 544(a)(1), the trustee has the power, under applicable state law, of a judicial lien creditor whether or not such a creditor actually exists. The Court must therefore make reference to the relevant provisions of Ohio law to determine MFG's rights vis-a-vis the Trustee in this case.

Under § 1309.20(A)(2) R.C. [UCC 9–301(1)(b)] an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected. Since under § 1309.-20(C) [UCC 9–301(3)] a lien creditor includes a trustee in bankruptcy from the date of the filing of the petition, it is apparent that, MFG's lien having been unperfected under Ohio law on the date of the filing of the petition in bankruptcy, it is subordinated to the rights of the trustee in this case.

MFG, while not disputing the above analysis, argues that, notwithstanding its unperfected status, it is entitled to participate in the proceeds of the sale of the property herein as if it were a secured creditor as a result of a certain subordination agreement of January 28, 1978 between the Ohio Citizens Bank ("Ohio Citizens") and MFG's assignee, the Northeastern Ohio National

Bank ("NEO"). Pursuant to the terms of this agreement, MFG argues, Ohio Citizens committed itself to a subordinate position vis-a-vis MFG's loan to Debtor. Since Ohio Citizens has, by order of July 23, 1983, been found to have a perfected security interest in the subject property, MFG argues that, by virtue of its subordination agreement with Ohio Citizens, it is entitled to be treated as a secured creditor irrespective of its secured or unsecured status.

MFG relies upon § 510(a) of the Bankruptcy Code and other authorities which recognize, in general terms, the enforceability of a subordination agreement in a case under the Bankruptcy Code. *See In re Credit Industrial Corp.,* 366 F.2d 402 (2d Cir.1966); *Citibank v. Smith Jones, Inc.,* 17 B.R. 128 (Bkrtcy.D.Minn.1982); *In re Eaton Factors Co., Inc.,* 3 B.R. 20, 5 B.C.D. 1205 (Bkrtcy.S.D.N.Y.1980). Section 510(a) provides as follows: "[a] subordination agreement is enforceable in a case under this title to the same extent such agreement is enforceable under applicable nonbankruptcy law." While acknowledging in general terms, that § 510(a) provides that creditors may share in a debtor's assets in accordance with their contractual rights, the Court must decline to follow that rule in distributing the proceeds of sale of estate property in this case.

None of the authorities relied upon by MFG permit a creditor to improve its ranking *as against the trustee* by virtue of a subordination agreement. Consensual or contractual subordination agreements, on the other hand, are uniformly upheld and enforced by the bankruptcy courts to adjust *intercreditor* relationships.

As between secured creditors, the usual subordination agreement gives priority or precedence of lien right or debt payment to a junior indebtedness over a senior but subordinated obligation. As between unsecured creditors, on the other hand, instead of the normal pro rata distribution, a subordination agreement might provide that one creditor's claim be satisfied in full before the claim of the subordinated creditor. A subordination agreement between creditors, however, "affects only their rights and does not interfere with or change the rights of other creditors." *Pioneer-Cafeteria Feeds, Ltd. v. Mack (In re Wyse),* 340 F.2d 719, 723 (6th Cir.1965). Assuming, *arguendo,* that the subordination agreement in issue in this case is valid and that it in fact gives MFG's claim priority over that of Ohio Citizens, while effective between MFG and Ohio Citizens, this Court holds that it has no effect and is unenforceable against the Trustee to give MFG a perfected secured claim.

A similar situation arose in *Cherno v. Dutch American Mercantile Corp., (In re Itemlab, Inc.),* 353 F.2d 147 (2d Cir.1965). Amended by interlineation see Order of 1–18–84. Blanmill Realty Corp. loaned $87,-000.00 to Itemlab, Inc. (the bankrupt) secured by a chattel mortgage perfected in accordance with the provisions of § 230 of the New York Lien Law. Thereafter, Itemlab, Blanmill and Dutch American entered into a written subordination agreement which provided that Dutch American would loan $50,000.00 to Itemlab on the understanding that Blanmill's claim against Itemlab "shall ... be subject and subordinate in lien to the lien of said note for $50,000," and that "no part of the indebtedness ... shall be paid [to Blanmill] until all sums due and owing to Dutch American Mercantile Corp. shall have been paid and disposed of." 353 F.2d at 149. Dutch American took no chattel mortgage on its note as did Blanmill, nor did it obtain an assignment of Blanmill's note or chattel mortgage, nor was the subordination agreement filed or recorded.

As part of a scheme to obtain additional cash for Itemlab, Blanmill filed a satisfaction of the mortgage debt in spite of the fact that no part of the mortgage debt had ever been paid. In reliance upon the fact that there was no recorded mortgage on the chattels an innocent lender, the 18th Avenue Land Corp., made a loan to Itemlab secured by a chattel mortgage on the same property without the knowledge of Dutch American.

The referee denied Dutch American's petition for an order declaring it to have a first lien on the proceeds from the sale of the chattels in question but the District Court reversed concluding that Dutch American held an equitable assignment of

the Blanmill chattel mortgage and that the law of New York did not require Dutch American to record it.

In reversing the decision of the district court, the court of appeals, finding nothing in the terms of the subordination agreement to effect an assignment of Blanmill's claim against Itemlab to Dutch American, responded to Dutch American's claim that a subordination agreement automatically created an equitable lien in its favor: "it [the subordination agreement] does not in and of itself assign to the junior creditor or encumbrance the senior debt or the evidence of the senior debt *or the security covering it.* Subordination is something quite apart from an assignment of an obligation or *its accompanying security,* and we find no authority for the proposition urged by the appellee." 353 F.2d at 151 (emphasis added). The court in Itemlab went on to note that even "[h]ad an equitable lien been found to exist the applicable law of New York in any event would defer the priority of such liens to subsequent legal liens of judgment creditors and, therefore, to the claim of the trustee in bankruptcy." 353 F.2d at 153.

In the present case, MFG's claim of perfection of its security interest via the subordination agreement with Ohio Citizens sounds of the claim rejected in *Itemlab* and is similarly rejected by this Court. As in *Itemlab,* even if MFG could claim an equitable lien it would nevertheless be subordinate, under the relevant provisions of UCC, to a subsequent legal lien of a judgment creditor and is invalid against the Trustee in this case who has asserted his hypothetical lien creditor status under § 544(a)(1). *See Hassett v. Revlon, Inc. (In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 120 (Bkrtcy.S.D.N.Y.1982). MFG, then, has an unsecured claim in these proceedings and is entitled to no present distribution from the proceeds of the instant sale.

As a final matter, alluded to earlier, the Court's resolution of the present dispute between the Trustee and MFG is in no way meant to be determinative of whatever claim MFG may have against Ohio Citizens by means of the subordination agreement in issue. Indeed, for present purposes, the Court merely assumed the agreement in issue was valid and that it subordinated the claim of Ohio Citizens to MFG's. Furthermore, since the resolution of MFG's claim against Ohio Citizens can in no way be beneficial to the estate in this case, the Court, if called upon to so determine it, will abstain and defer determination of this matter to the state courts.

The Court further finds that, whatever the outcome of any state court litigation between MFG and Ohio Citizens, Ohio Citizens shall have no further right to participate in the distribution in this case. The lien of MFG has been determined to be void for all purposes, whether from a direct recovery by MFG or by way of further claim by Ohio Citizens.

SO ORDERED.