S. S. SILBERBLATT, INC., and S. S. Silberblatt, Inc., on behalf of itself and all other persons entitled to share in funds allocated for the improvements of real property owned by East Harlem Pilot Block—Building 1 Housing Development Fund Company, Inc., East Harlem Pilot Block—Building 2 Housing Development Fund Company, Inc., East Harlem Pilot Block—Building 3 Housing Development Fund Company, Inc., and East Harlem Pilot Block—Building 4 Housing Development Fund Company, Inc., Plaintiffs,

v.

EAST HARLEM PILOT BLOCK—Building 1 Housing Development Fund Company, Inc., East Harlem Pilot Block—Building 2 Housing Development Fund Company, Inc., East Harlem Pilot Block—Building 3 Housing Development Fund Company, Inc., East Harlem Pilot Block—Building 4 Housing Development Fund Company, Inc., Patricia Roberts Harris, as Secretary of the United States Department of Housing and Urban Development and Chemical Bank, Defendants.

Nos. 76 Civ. 3084(MP), 77 Civ. 62(MP), 77 Civ. 872(MP), 77 Civ. 955(MP), 77 Civ. 956(MP), 77 Civ. 1668(MP), 77 Civ. 1909(MP), 77 Civ. 2595(MP), 77 Civ. 2596(MP), 77 Civ. 2839(MP), 77 Civ. 2840(MP), 77 Civ. 2943(MP), 77 Civ. 2944(MP), 77 Civ. 3074(MP), 77 Civ. 3076(MP), 77 Civ. 3081(MP), 77 Civ. 3083(MP), 77 Civ. 3132(MP), 77 Civ. 3135(MP), 77 Civ. 4403(MP), 77 Civ. 5125(MP), 77 Civ. 5341(MP), 77 Civ. 6262(MP), 78 Civ. 163(MP), 78 Civ. 164(MP), 78 Civ. 2085(MP), 78 Civ. 2559(MP) and 78 Civ. 2560(MP).

United States District Court,
S. D. New York.

Nov. 8, 1978.

Demov, Morris, Levin & Shein, New York City, for plaintiffs by Kenneth M. Block, New York City, of counsel.

Null & Null P.C., Garden City, N. Y., for Silberblatt in 31 related cases by Douglas P. Null, Garden City, N. Y., of counsel.

Orans, Elsen, Polstein & Naftalis, New York City, for East Harlem defendants by Jerome T. Orans, Gary H. Greenberg, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant HUD by Nathaniel L. Gerber, Sp. Asst. U. S. Atty., Patrick H. Barth, Asst. U. S. Atty., New York City.

Cravath, Swaine & Moore, New York City, for defendant Chemical Bank by James A. Beha II, New York City, of counsel.

Louis A. Mangone, New York City, for plaintiff—Unity Stove Co., Inc.

## OPINION

POLLACK, District Judge.

Defendant Chemical Bank made a $39-million construction loan to the East Harlem defendants secured by a mortgage of the property for construction by S. S. Silberblatt, Inc. of Taino Towers. The loan was insured by HUD. Silberblatt undertook to complete construction by February 29, 1976. Failure to complete the project on time was a stipulated default under the loan agreement and Silberblatt so understood. The project was not completed in February 1976; it was only 92.8% completed as of July 7, 1976.

On March 19, 1976, Chemical declared East Harlem to be in default on the building loans because of failure to complete the project on time and refused to advance further monies under the loan agreement including funds to pay Silberblatt's last requisition which was approved by the architect and HUD. Silberblatt then suspended its performance under the construction contracts because the approved requisition dated March 5, 1976 was not paid.

On July 8, 1976 Chemical assigned its interests in the loan agreements and mortgages to HUD together with undisbursed loan proceeds that had been held as retainages. Silberblatt was entitled to be paid monthly for all labor and materials furnished, less a 10% retainage payable upon completion of the project.

On August 18, 1977, HUD agreed with the owners to complete the project and authorized a maximum expenditure of $16,-

363,740 for that purpose. Yunque Development Corporation agreed to do the work. That amount represents undisbursed mortgage proceeds of $4,302,890.34 and an additional $12,060,849.66 of new money committed by HUD. The project is currently being completed.

Silberblatt brought suit against East Harlem, HUD and Chemical in state court on July 9, 1976 asserting a claim under the New York Lien Law for the moneys due it for the balance of the Construction Contracts ($455,009.40), for materials in inventory ($300,000.00), for the retainages due under the Construction Contracts ($3,370,-480.10); for expenses and liabilities of Silberblatt due to failure of the defendants to make timely payments due it ($4,599,346.24) and for "approved change orders" ($1,164,-161.59). Silberblatt also sought therein to enjoin the transfer of the mortgage proceeds to HUD. That suit was removed to this Court by HUD pursuant to 28 U.S.C. §§ 1441, 1442(a)(1). HUD has asserted counterclaims against Silberblatt based on its failure to complete the project on time and in the amount of $15-million. East Harlem has asserted a similar counterclaim against Silberblatt in the amount of $12.5-million.

HUD's motion for summary judgment is predicated on two cardinal points. *One*, that the Building Loan Agreement binding on Silberblatt as a third party beneficiary thereof provides that if necessary upon a default of the owner to timely complete the project by the stipulated date, HUD may step in and complete the project and use the mortgage funds that have not been advanced to the owner including amounts otherwise payable therefrom to the defaulting contractor for labor and materials supplied and moneys withheld as retainages to complete construction. The relevant provision, paragraph (9), of the Building Loan Agreement reads as follows:

the Borrower hereby constitutes and appoints the Lender its true and lawful attorney-in-fact, with full power of substitution in the premises, to complete the project in the name of the borrower. The Borrower hereby empowers said attorney as follows: (a) To use any funds of the Borrower, including any balance which may be held in escrow and any funds which may remain unadvanced hereunder for the purpose of completing the project . . . . .

The Borrower hereby assigns and quitclaims to the Lender all sums unadvanced under the Mortgage and all sums due in escrow conditioned upon the use of said sums for the completion of the project, such assignment to become effective only in case of the Borrower's default.

Upon assignment from Chemical, the Secretary of HUD succeeded to the rights and obligations of the "Lender" in the foregoing provision (¶ (18) of the Building Loan Agreement). Silberblatt concedes that HUD has spent or committed itself to spend more than the amount of the escrow and retainage funds held under the loan agreement to complete construction.

*Two*. The second principal point made by the Secretary on her motion relates to Silberblatt's claims for damages for delay. The Secretary contends that these are barred from suit herein by the doctrine of sovereign immunity, 28 U.S.C. §§ 2679(a) and 1346(b) and must be pursued within the terms of the Federal Tort Claims Act. Further, that Siblerblatt's claim for additional work may not be maintained because the changes were not approved as required by the construction contract nor was the mortgage increased to cover the alleged change orders and Silberblatt's claim against the Secretary could only be asserted against undisbursed mortgage proceeds. *Cf. F. W. Eversley & Co., Inc. v. East New York Non-Profit H. D. F. C., Inc.*, 409 F.Supp. 791, 793–94 and n.2, 800 (S.D.N.Y.1976) (Werker, J.).

Silberblatt disputes the two cardinal points mentioned above on which HUD relies for dismissal of this suit against it.

■ 1. Silberblatt claims an equitable lien against the undisbursed mortgage proceeds on hand at the time of the default arising from the failure to complete construction. Plaintiff's claim for relief

against HUD is founded on the doctrine of several recent cases generally known as the *Trans-Bay* doctrine. Properly stated—in the Court's opinion—that doctrine holds that where a contractor has satisfactorily completed performance of his contractual obligation, a default by the mortgagor will not bar its recovery from HUD of retainages from any undisbursed mortgage proceeds that have been assigned to the Secretary, and an equitable lien will be impressed on such funds in favor of the contractor. Silberblatt's key difference with this formulation is that it contends that the cases do not require *completion* of the construction contract for imposition of such an equitable lien. Analysis of every case applying an equitable lien as against a contractual right of HUD to use undisbursed mortgage funds shows that equitable liens were imposed where construction of the project was completed by the contractor or his privy to HUD's satisfaction. In those circumstances the government's holdback rights were held not to be narrowly defined by the strict contractual provisions but were held subject to equitable lien for the benefit of the contractor regardless of other contractual breach or insolvency of the owner. *Travelers Indem. Co. v. First National State Bank of New Jersey*, 328 F.Supp. 208 (D.N.J.1971) (contractor *completed* construction, project accepted as complete by bank and HUD); *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164 (D.V.I. 1975) (contractor's surety *completed* construction and occupancy certificate issued); *Trans-Bay Engineers & Builders, Inc. v. Hills*, 179 U.S.App.D.C. 184, 551 F.2d 370 (1976) (construction of project *completed* to HUD's satisfaction within time fixed by construction contract); *F. W. Eversley & Co., Inc. v. East New York Non-Profit H. D. F. C., Inc.*, 409 F.Supp. 791 (S.D.N.Y. 1976) (Werker, J.) (contractor *completed* construction required; occupancy certificates issued); *Bennett Constr. Co., Inc. v. Allen Gardens, Inc.*, 433 F.Supp. 825 (W.D. Mo.1977) (builder brought project to full and final *completion* to the satisfaction of HUD); *United States v. Mill Ass'n, Inc.*, No. 74–C–1713 (E.D.N.Y. 1/25/78) (Bartels, J.) (builder *completed* construction and obtained all necessary permits and certificates).

■ In assessing the relative priorities where a project remains uncompleted and HUD has undertaken to complete it, the equities compel the holding that retainages and escrowed funds were intended to secure completion and where HUD completes the project it is equitably entitled thereto, as in this case, in priority to any claims of the contractor who has not completed the project. Clearly all parties contemplated that the retainages would be used for completion of the project and not payment of contractor's claims. This purpose of the retainage fund has been fully recognized in the cases.

The amount held back was held for two reasons: first, to stimulate completion of the construction according to the timetable, and second, to insure that a fund would be available to complete the project if the contractor defaulted in part. *F. W. Eversley & Co., Inc., supra*, 409 F.Supp. at 799.

■ Paragraph (9)(d) of the loan agreement herein vests discretion in the Lender or its assignee to pay claims "as may be necessary or desirable for the completion of the project." The discretion thus accorded the Secretary disposes of Silberblatt's argument that its claim must be paid pursuant to this provision of the loan agreement.

■ Silberblatt's contention that the Secretary was bound to utilize its services before turning to a different contractor is at odds with the mortgagee's certificate which confirms the right of the mortgagee or HUD as assignee to complete the project in the event of default by the borrower. Similarly any right of the contractor to complete the contract exists only *prior* to default and HUD is not bound to deal with the contractor after the owner's default.

■ 2. The damage claim for delays that Silberblatt has asserted herein sounds in tort and is barred by sovereign immunity. Its true nature as a tort claim is seen from the details of the "Claim Calculations"

prepared and circulated by plaintiff's counsel in the course of pretrial discovery. None of the damage claim is for performance under the construction contract. All of the components of the claim relate to costs of delays occasioned by acts attributed to those in charge. The fact that HUD was the insurer of the mortgage does not afford a litigant a right to sue the Secretary independent of the strictures of the Federal Tort Claims Act ("F.T.C.A."). *See Edelman v. Federal Housing Administration*, 251 F.Supp. 715 (E.D.N.Y.1966), *aff'd*, 382 F.2d 594 (2d Cir. 1967).

■ Silberblatt's claim for extra work also falls under the F.T.C.A. ban apart from the fact that the work was not covered by approved change orders. If this claim is construed as a claim on an implied contract created by the actions of HUD's officials and/or the owners, it is barred by the doctrine of sovereign immunity previously mentioned and the claim therefor must be pursued under the F.T.C.A. *Modular Technics Corp. v. South Haven Houses Housing Development Fund Co., Inc.*, 403 F.Supp. 204 (E.D.N.Y.1975), *aff'd mem.*, 538 F.2d 311 (2d Cir. 1976).

Accordingly, HUD's motion for summary judgment must be and hereby is granted, dismissing the complaint against the Secretary. This disposition consequently requires that East Harlem's motion for summary judgment must be granted in part in so far as the claim against those defendants seeks escrowed funds and retainages. This Court declines to exercise pendent jurisdiction over the balance of Silberblatt's claims against East Harlem, and hereby remands them to the state court from whence they came.

HUD's motion for summary judgment on the third party complaints against it in the several related subcontractor actions must be granted for the same reasons.[1] As the Secretary is no longer a party thereto, the subcontractor actions removed by her also must be remanded to the state court for lack of federal jurisdiction.[2]

■ The claim against Chemical Bank based on the escrowed funds and retainages is necessarily dismissed on the merits. No factual or legal basis in support of such claim has been demonstrated.

■ Silberblatt's motion for leave to amend its complaint to add a claim for

---

1. HUD's motion for summary judgment is granted in each of the cases listed in footnote 2 and:

| | |
|---|---|
| Johnson Controls, Inc. | 77 Civ. 62 (MP) |
| AC & S, Inc. | 77 Civ. 872 (MP) |

2. A list of the cases so remanded to the state court is as follows:

| | |
|---|---|
| N.Y. Plumbers Specialty Co., Inc. | 77 Civ. 955 (MP) |
| Lance Investigation Service, Inc. | 77 Civ. 956 (MP) |
| Brooklyn & Queens Allied Oil Burner Corp. | 77 Civ. 1668 (MP) |
| Unity Stove, Inc., *et al.* | 77 Civ. 1909 (MP) |
| Crown Kitchen Cabinet Corp. | 77 Civ. 2839 (MP) |
| Hope's Windows | 77 Civ. 2840 (MP) |
| Active Fire Sprinkler Corp. | 77 Civ. 2943 (MP) |
| Paniflex Corporation | 77 Civ. 2944 (MP) |
| Joseph Datello, President of Cement & Concrete Workers | 77 Civ. 3074 (MP) |
| Air Balancing & Testing Corp. | 77 Civ. 3075 (MP) |
| Williamsburg Steel Products Co. | 77 Civ. 3076 (MP) |
| Yonkers Plate Glass, Inc. | 77 Civ. 3081 (MP) |
| Model Metal Industries, Inc. | 77 Civ. 3082 (MP) |
| Giamboi Plastering Corp. | 77 Civ. 3083 (MP) |
| Kalwall Corporation | 77 Civ. 3132 (MP) |
| Norkin Plumbing Co., Inc. | 77 Civ. 3133 (MP) |
| Armor Elevator Co., Inc. *et al.* | 77 Civ. 3134 (MP) |
| Royal Installations, Inc. | 77 Civ. 3135 (MP) |
| Allied Oil Burner Service Co., Inc. | 77 Civ. 4403 (MP) |
| Visulite Division of Martin Katz Corp. | 77 Civ. 5125 (MP) |
| Patrol & Guard Enterprises, Inc. | 77 Civ. 5341 (MP) |
| Marbee Company, *et al.* | 77 Civ. 6262 (MP) |
| Altherm, Inc. | 78 Civ. 163 (MP) |
| Welsbach Concrete Systems Corp. | 78 Civ. 164 (MP) |
| American Olean Tile Co. | 78 Civ. 2085 (MP) |
| Merit Studios, Inc. | 78 Civ. 2559 (MP) |
| Vibration Mounting & Controls, Inc. | 78 Civ. 2060 (MP) |
| Vincent Anastasi, *et al.* | 77 Civ. 2595 (MP) |
| Arthur Cavazzi, *et al.* | 77 Civ. 2596 (MP) |

damages against Chemical must be denied. The original claim against Chemical was predicated on its possession of a fund to which a lien could attach, and it was on this basis that this case has progressed through the extensive discovery for over two years. Chemical did not participate in that discovery because it had assigned the fund—the object of plaintiff's claim—to HUD. The proposed amendment asserts an entirely new claim, and it would be highly inequitable and inappropriate to permit it at this stage of the litigation.

Settle judgment accordingly on five days' notice on or before November 20, 1978.

SO ORDERED.