Robert A. Conkling, Jr., et al., Respondents-Appellants, v. First National Bank of Olean, Appellant-Respondent, et al., Defendants.

Fourth Department, November 2, 1955.

*Robert M. Diggs* for respondents-appellants.

*C. J. McCarthy* for appellant-respondent.

KIMBALL, J. The plaintiffs appealed from that part of the judgment which denied their application for an extra allowance and to recover their costs and disbursements and the extra allowance out of the share of the defendant, Wightman. The action was not one for the partition of real property nor do we think it may be held to be "a difficult and extraordinary case, where a defense has been interposed in an action". (Civ. Prac. Act, § 1513; *Matter of Baker,* 284 N. Y. 1.) We are satisfied that the application of the plaintiffs was properly denied.

The defendant bank appealed from that part of the judgment which granted a lien in favor of the plaintiffs, superior to the mortgage and judgment liens of the bank. As the Special Term found, the defendant Wightman owned a one-sixth interest as a tenant in common with the plaintiffs in a certain oil lease. These tenants in common operated the well and the oil was run to a pipe-line company. Division orders were filed with the pipe-line company and, subject to the royalty, each tenant in common was paid for his proportionate share of the oil run directly by the purchaser. The total expense of equipment and operation of the well was paid by each tenant in common of the lease in proportion to his interest. In 1951, the defendant Wightman borrowed $50,000 from the defendant-appellant bank on his note. As security, he executed to the bank a mortgage upon '' An undivided one-sixth interest '' in the said oil lease. The mortgage also covered Wightman's one-sixth interest in the tools and equipment. As further security, the mortgage provided: '' Said mortgagor does likewise hereby sell, assign and transfer unto the Mortgagee a one-sixth ($\frac{1}{6}$) part of the seven-eighths ($\frac{7}{8}$) of the oil remaining after payment of one-eighth ($\frac{1}{8}$) thereof to the lessors as to the oil now being produced or which may hereafter be produced and sold from the premises described in the lease numbered ' 3 ' above, the proceeds from such sales to be received by the Mortgagee and applied at the end of each calendar month upon said indebtedness, and upon the interest thereon ''. The mortgage was recorded and also filed as a chattel mortgage. Thereafter the bank received Wightman's share of the oil sold and applied the same upon his indebtedness. Apparently, the plaintiffs made no objection to the arrangement by which the bank received Wightman's share of the oil. However, in about April, 1953, a little over two years after the making of the loan and the mortgage, Wightman discontinued paying for his share of the expenses and the bank did not do so. The court found that Wightman's share of expenses from April, 1953, to the time of trial was $3,548.43 and this was the amount adjudged to be an equitable lien in favor of the plaintiffs upon Wightman's share of the proceeds of sale of the lease, the equipment and the net proceeds of oil in the hands of the receiver. It was further adjudged that the said lien of the plaintiffs was superior to the liens of the defendant-appellant bank.

Whatever the exact nature of the plaintiffs' action may have been (the Special Term expressed uncertainty as to it), no party raised any question and it was agreed that a sale be had

of the lease and the equipment and a receiver was appointed to continue the operation of the well pending the action. The demand for relief asked that the proceeds be applied '' according to the respective rights of the parties '' and that '' an accounting be had of the affairs of the joint venture.'' The complaint did not allege a lien in favor of the plaintiffs, or make claim of superiority to the bank's liens. The bank's answer set up the facts of the mortgage and claimed a lien on Wightman's share of the proceeds and payment thereof before any payment to the plaintiffs.

In support of the adjudication of a lien in favor of the plaintiffs, the court at Special Term found that the plaintiffs and Wightman were operating the lease as '' a joint venture for the production of oil '', although it was found that they held the lease itself as tenants in common. It was held that they owned the machinery and equipment as tenants in partnership. It is not entirely clear that the plaintiffs' lien was based upon the theory of a '' joint venture '' or partnership, in which case, the assignability of Wightman's interest might be limited by paragraph (b) of subdivision 2 of section 51 of the Partnership Law. If a joint venture or partnership is relied upon, we are of the opinion it was error to impress Wightman's share with the lien. This is for the reason that the evidence does not support a finding of joint venture either as to the lease itself or as to the machinery and equipment. As to the lease and the proceeds of the sale thereof, we agree with the Special Term that the relationship was that of tenants in common. Certainly there was no joint venture as to moneys in the hands of the receiver. As to the machinery and equipment, we think there was no joint venture or partnership relationship. There was no written or oral joint venture or partnership agreement between the tenants in common of the lease. In fact no co-owner was called to testify. There was no partnership or joint venture account of the income and expenses. Each tenant in common of the lease was paid individually for his share of the oil run and each individually paid his share of expenses out of his own personal funds. There were no partnership funds. There were no partnership profits and losses or agreement to share the same. A tenancy in common, joint property, common property or part ownership does not of itself establish a partnership (Partnership Law, § 11, subd. 2). There is no evidence sufficient for a finding of a partnership relationship as to the machinery and equipment. The Pennsylvania courts hold that co-owners working oil wells are tenants in common and do not become

partners. They are working their own shares. (*Butler Sav. Bank* v. *Osborne,* 159 Pa. 10; *Dunham* v. *Loverock,* 158 Pa. 197.) The lien awarded the plaintiffs may not be sustained on the theory of joint venture or partnership.

Regardless of the relationship between the plaintiffs and Wightman. it appears that the Special Term relied upon the theory of unjust enrichment to support the lien of the plaintiffs. We agree that Wightman was under the obligation of paying his share of the operating expenses. There is no evidence that the bank agreed to assume that obligation. In fact, for two years, Wightman did pay his share while the bank was receiving the proceeds of the oil and applying the same on Wightman's note. No claim of lien on the oil proceeds was made so long as Wightman paid his share. A so-called " equitable lien " does not arise of itself because the court feels it should. It usually arises by reason of an agreement. (53 C. J. S., Liens, § 2.) There must be proof that clearly establishes an intention that there be a lien. (*Di Niscia* v. *Olsey,* 162 App. Div. 154.) There is no proof that there was any arrangement or agreement between these tenants in common that the interest of any one of them in the lease or in the equipment should be the subject of a lien in the event of a breach of contract of such one to pay his share. " It may be pointed out that to find an equitable lien it is necessary that an intention to create such a charge clearly appear from the language and the attendant circumstances. Strict proof of such intention is required. * * * To make such a lien binding upon a third party, it is necessary that its existence as a lien be fully proven." (*Pennsylvania Oil Products Refining Co.* v. *Willrock Producing Co.,* 267 N. Y. 427, 434–435.) What proof there is seems to negative any intention that Wightman's interest in the lease and in the machinery and equipment and, indeed in the oil run, should be the subject of a lien for the amount Wightman failed to pay as his share of the expenses. Upon Wightman's default in payments, his co-owners had the right to operate without him. Likewise the bank, as Wightman's assignee, had no right greater than Wightman's, to have the operation continued. However, that does not establish an agreement that Wightman's interest was subject to a lien superior to the appellant bank's mortgage and judgments. We conclude, therefore, that the appellant bank's mortgage and judgment liens against the interest of Wightman in the proceeds of the sale are superior to any claim of the plaintiffs against such interest. The appellant is entitled to one sixth of the proceeds of sale, after payment of the expenses

of the sale, fees and disbursements and is likewise entitled to one sixth of the net proceeds of the sale of oil in the hands of the receiver.

The receiver's accounts are judicially settled by the decree. We do not feel that we are in position to determine one or two minor objections to certain computations. Such determination may more readily and fairly be made by Special Term.

The judgment insofar as it denies plaintiffs' application for an extra allowance and to have the expenses of the sale and their costs and disbursements paid out of the share of defendant Wightman should be affirmed, and the part of the judgment from which the defendant, First National Bank of Olean, N. Y., has appealed should be reversed and the matter remitted to the Special Term for rendition of judgment in favor of the defendant-appellant in accordance with this opinion.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Wheeler and Van Duser, JJ.

Judgment insofar as it denies plaintiffs' application for an extra allowance affirmed; otherwise judgment insofar as appealed from reversed on the law and facts, with costs to defendant bank, and matter remitted to the Special Term for further proceedings not inconsistent with the opinion. Certain findings of fact disapproved and reversed and new findings made.