UNITED STATES of America, Plaintiff,

v.

MILL ASSOCIATION, INC., et al., Defendants.

MARCH CONSTRUCTION CO., INC., Plaintiff,

v.

Patricia HARRIS, the Secretary of the United States Department of Housing and Urban Development, Defendant.

Nos. 74–C–1713, 77–C–376.

United States District Court, E. D. New York.

Jan. 25, 1978.

On Claims for Sums Due Under Change Orders Feb. 16, 1979.

On Prejudgment Interest March 23, 1979.

David G. Trager, Edward R. Korman, U. S. Attys., Eastern District of New York, Brooklyn, N. Y., for plaintiff in Action # 1 and for defendant in Action # 2; Rodger C. Field, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Bell, Wolkowitz, Beckman & Klee, New York City, for defendant March Construction Co., Inc. in Action # 1 and for plaintiff in Action # 2; Lawrence G. Nusbaum, Jr., New York City, of counsel.

BARTELS, District Judge.

I

These are two motions for summary judgment under Fed.R.Civ.P. 56 arising out of the default of Mill Association ("Mill") on a mortgage of a group practice medical facility insured by the Federal Housing Administration ("FHA"). In the first action, the United States seeks to foreclose on the

mortgage, and in the second, March Construction Co. ("March"), which built the facility, seeks recovery of sums due it for the construction.

## FACTS

Mill is a private, non-profit corporation formed for the purpose of providing group practice medical services. It had no significant assets other than the heavily mortgaged land in Freeport, L.I., on which its group practice facility was to be constructed. In order to finance construction of the facility, it was necessary for Mill to seek a commitment from the FHA to insure the mortgage that Mill expected to obtain from a commercial lender. The FHA investigated Mill's proposal and, after Mill had acted on certain FHA criticisms, issued a commitment to insure. Mill thereupon executed a building loan agreement and mortgage with Chemical Bank, which was subsequently insured by FHA.

In the meantime, Mill had entered into a construction contract with March to be financed by the building loan agreement, to which reference was made in the construction contract. March began work under the contract immediately and received payments in accordance therewith in installments equal to the incremental value of the work done less 10% (later 5%) holdback. March also did off-site work on sidewalks and curbs, to be paid for out of $10,000 held in escrow by Chemical for that purpose, and did certain extra work under change orders. March claims, and the government does not deny, that March completed work in February, 1972, and obtained all necessary permits and certificates and thus became entitled to payment in full under the contract thirty days thereafter. Final payment was not forthcoming, however, and Mill eventually went into default.

Although the Federal Housing Commissioner eventually approved release of the balance due March under the contract, Chemical did not release the funds to Mill for payment to March, but instead exercised its option under the insurance agreement to assign the mortgage to the FHA.

As part of this assignment procedure Chemical turned over to the FHA all sums held by it in connection with the mortgage, including $100,506.20 in undisbursed mortgage proceeds and $10,000 from the off-site escrow account.

## MOTION TO FORECLOSE

Jurisdiction over this action is based on 28 U.S.C. § 1345. Since there is no genuine dispute on any material fact as to the government's right to foreclose the mortgage and since March has failed to show as a matter of law that it has a lien on the premises superior to the mortgage, the government's motion for summary judgment must be granted.

■ 1. March claims that it has an equitable lien on the premises because it started work under the construction contract prior to execution of the building loan agreement and mortgage but with an understanding that the property would stand as security for its work. However, the building loan agreement, upon which March relied for payment, stated that the mortgage would be a valid first lien. The circumstances thus fail to reveal any written agreement for a lien or any clear intention of the parties that any oral lien would be valid or would continue beyond execution of the building loan agreement and mortgage. *See Penn Oil P. R. Co. v. Willrock Producing Co.*, 267 N.Y. 427, 196 N.E. 385 (1935).

■ 2. Nor does March have a mechanic's lien under the New York Lien Law. March's lien, even if timely filed in December, 1972, would be extinguished by operation of law after one year unless extended. The discontinued earlier action brought by the United States to foreclose the mortgage did not extend the life of the lien, because March was not named as a defendant therein, and there is no showing that a lis pendens was filed by anyone. March's mechanic's lien is thus extinct. *See* N.Y. Lien L. §§ 13, 17, 19.

## RECOVERY OF SUMS DUE MARCH

Jurisdiction over March's claims against the Secretary of H.U.D. is based on 28

U.S.C. § 1331, since this action is governed by federal common law. *Trans-Bay Engineers & Builders, Inc. v. Hills*, 179 U.S.App. D.C. 184, 551 F.2d 370 (D.C. Cir. 1976). We find that March should recover the sums specified for the reasons given below.

■ 1. We find that the principles set forth in *Trans-Bay, supra; Spring Construction Co. v. Harris*, 562 F.2d 933 (4th Cir. 1977), and *F. W. Eversley & Co. v. East N. Y. Non-Profit H. F. D. C.*, 409 F.Supp. 791 (S.D.N.Y.1976), control the decision of this case. We therefore hold that March is entitled to recover the sums due it for the holdback and off-site construction work as a third-party beneficiary to the building loan agreement and as holder of an equitable lien in the undisbursed mortgage proceeds and in the off-site escrow fund. We believe that the intent to benefit the contractor is clear, noting, for instance, the statement in the building loan agreement that, in compliance with the New York Lien Law, Mill would hold the advances in trust for March. The fact that March may not have submitted an application for final payment until after Mill's default in July, 1972, is immaterial, for such a submission was simply a minor housekeeping detail or contractual immateriality which cannot affect the substantive rights of the parties. Moreover, there is a question of unjust enrichment resulting to the United States. Although it is doubtful that the United States will recover the losses it suffered on its insurance of this project, it would still be unjustly enriched were it permitted to obtain by foreclosure a building constructed by March which has not been completely paid for by Mill or with the mortgage monies.

2. *Trans-Bay, Spring* and *Eversley, supra*, involved insurance of mortgages for low income housing, while this case involved the insurance of a mortgage for a group medical practice facility under Title XI of the National Housing Act, 12 U.S.C. §§ 1749aaa *et seq.* We believe that this is a distinction without a difference and that the same principles should be applied in both cases.

(a) Mill was essentially a no-asset non-profit corporation made viable solely by FHA support. Title XI was enacted to facilitate the financing of group practice facilities, for Congress had found that group practice was a means of reducing hospital utilization, making more efficient use of scarce manpower and expensive diagnostic equipment, and making a range of medical services conveniently available in the face of increasing specialization. H.R. Rep.No. 1931, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Admin.News, pp. 3999, 4027.

(b) The FHA exercised control over the financing and operation of this project comparable to that exercised over the low-income housing involved in *Trans-Bay* and *Spring*; for example, as noted in the construction contract and building loan agreement, even the installment payments to the contractor were subject to the approval of the Federal Housing Commissioner before they could be released under the building loan agreement. The Commissioner's approval was also required before any work could be subcontracted.

(c) The fact that the FHA could insure only 90% of the mortgage, as compared with insurance of 100% of low-income housing mortgages, is irrelevant, since March is seeking recovery not out of the insurance proceeds paid by the government to Chemical but out of the undisbursed proceeds held by Chemical under the building loan agreement and assigned to the FHA together with the mortgage. These monies were held for ultimate payment to March which accordingly had an equitable lien thereon.

■ 3. The government's claim that sovereign immunity bars any recovery by March must be rejected. Congress provided that the Secretary could "sue and be sued" under the National Housing Act in 12 U.S.C. § 1702, and the Supreme Court has held that this waiver of sovereign immunity is to be broadly interpreted. *F. H. A. Region No. 4 v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). Although the funds in question are kept in a treasury account, *cf. Burr, supra*, they are disbursa-

ble at the discretion of the Secretary of H.U.D. and indeed are funds originating not from the United States but from Chemical Bank under its contract of insurance with the FHA and are thus not protected by the sovereign's immunity. The government's reliance on *Modular Technics Corp. v. South Haven Dev. Fund Co., Inc.,* 403 F.Supp. 204, *aff'd mem.,* 538 F.2d 311 (2d Cir. 1976), is misplaced, for in that case the contractor contended that an implied contract had been created between itself and the FHA by reason of the heavy involvement of the FHA's agents in the project. The Court there reasoned that the FHA agents had no authority to make such a contract and that § 1702 did not waive sovereign immunity for suits based on unauthorized acts. In this case, plaintiff is suing on the legal relationships which arise from authorized actions of the FHA, and § 1702 expressly waives sovereign immunity for such claims. *Trans-Bay, supra.*

■ 4. Summary judgment is not possible with respect to sums allegedly due under the change orders, since neither side has adequately explained how the change orders were approved in spite of Chemical Bank's statement that no money was on deposit to cover the cost of the changes. *Eversley, supra,* is not on point, for in that case there were handwritten interlineations on the change orders specifically indicating that the FHA had approved the sums in question. 409 F.Supp. at 794 n. 2.

■ 5. In the exercise of our discretion, we believe that March is entitled to pre-judgment interest on the sums due it, commencing on March 30, 1972. *Trans-Bay, supra. See generally Lodges 743 and 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. United Aircraft Corp.,* 534 F.2d 422 (2d Cir. 1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). The usual rule stated in the authorities cited by the government that the United States cannot be subjected to the payment of interest in the absence of an authorized engagement to pay it or a statute permitting its recovery is not necessarily applicable where the defendant is a separate governmental agency. *Nat'l Home for Disabled Volunteer Soldiers v. Parrish,* 229 U.S. 494, 33 S.Ct. 944, 57 L.Ed. 1296 (1913); *North New York Sav. Bank v. Federal Sav. & Loan Ins. Corp.,* 169 U.S. App.D.C. 384, 515 F.2d 1355 (D.C. Cir. 1975); *Bituminous Casualty Corp. v. Lynn,* 503 F.2d 636 (6th Cir. 1974). Although the FHA is no longer a separate federal instrumentality but is an "organizational unit within the Department of Housing and Urban Development," 24 C.F.R. § 200.2 (1976), all of its functions, powers and duties were transferred to the Secretary of H.U.D. by the Act of Sept. 9, 1965, Pub.L.No.89–174 § 5(a), 79 Stat. 669, and one of its duties was to pay interest when assessed against it. *Ferguson v. Union Nat'l Bank of Clarksburg, W. Va.,* 126 F.2d 753 (4th Cir. 1942). *See also United States v. P & D Coal Mining Co., Inc.,* 358 F.2d 619 (6th Cir. 1966).

### CONCLUSION

The motion by the United States to foreclose the mortgage is granted. Summary judgment is granted to March for (1) the sums due it for the holdback, to wit, $46,320 plus interest, and (2) the sums due it for the offsite work, to wit, $10,000 plus interest. Summary judgment is denied on March's claims for the sums due under the change orders.

SO ORDERED.

### II

### MOTIONS FOR SUMS DUE UNDER CHANGE ORDERS

These are twin motions for summary judgment under Fed.R.Civ.P. 56 arising out of the default of Mill Association ("Mill") on a mortgage of a group practice medical facility insured by the Federal Housing Administration ("FHA"). The motions are predicated upon a stipulation of facts entered into by the parties, plaintiff March Construction Co., Inc. ("March") and defendant Patricia Harris, Secretary of the United States Department of Housing and Urban Development ("HUD").

Originally, there were two actions, the first by the United States to foreclose the mortgage and the second by March to recover sums due it for construction. On January 25, 1978, this court granted summary judgment in favor of the United States on its motion in the first action (consolidated with the present action) to foreclose the mortgage and in favor of March on its motion in the second action to recover certain sums due it for the holdback and offsite work. At that time summary judgment was not possible with respect to March's claim for sums allegedly due under change orders.

The instant motions are both directed to March's claim for costs arising out of changes made, pursuant to change orders, during the course of construction. The issue here is whether the change orders, approved by HUD, should be paid from undisbursed mortgage proceeds, on the one hand, or escrow funds, on the other. HUD's defense is primarily sovereign immunity and the lack of any contractual or equitable obligation to pay for the cost of construction changes.

### FACTS

The facts are set forth both in the court's memorandum decision of January 25, 1978, and in the stipulation submitted by the parties and may be briefly summarized here as follows.

Mill, a private, non-profit corporation formed for the purpose of providing group practice medical services, had no significant assets other than the heavily mortgaged land in Freeport, L.I., on which its facility was to be constructed. To finance construction of the facility, Mill sought and received from FHA a commitment to insure the mortgage that Mill expected to obtain from a commercial lender. Thereafter, Mill executed a building loan agreement and mortgage with Chemical Bank, which was subsequently insured by FHA, and entered into a construction contract with March to be financed by the building loan agreement, to which reference was made in the construction contract.

March performed its work under the construction contract, for which it received payments less a percentage holdback, performed offsite work, to be paid out of an escrow fund, and performed certain corrective and additional work valued at $44,902 [1] pursuant to change orders. Requests for Construction Changes, referred to as change orders, were submitted to and approved by HUD on its Form No. 2437. Pertinent portions of that form, which purport to condition HUD's acceptance of the changes, read as follows:

"That a sum of $ [cost of changes] is on deposit with the mortgagee [Chemical Bank] to cover net increase in cost resulting from acceptable changes indicated herein and previous construction changes, if any.

"No further advances of the mortgage proceeds under the Building Loan Agreement will be approved unless the total sum is on deposit with you [Chemical Bank]."

"[I]f the net effect [of the accepted changes] is an increase [in the total cost of construction] the additional costs will be defrayed by the mortgagor. The acceptance of any change or changes involving a net increase does not increase the mortgage amount."

No deposits were held by Chemical Bank to cover the costs of construction changes; nor was an increase in the mortgage amount ever applied for or granted. Further advances of the mortgage proceeds were made, however, both after the receipt by HUD of change orders and after HUD approval.

March completed construction of the facility, including changes, in February 1972. Although Mill defaulted in July 1972, FHA eventually approved the release of the bal-

---

1. March has asserted that it is due $48,052 for construction changes. However, the change orders approved by HUD indicate that only changes in the amount of $44,902 were ap- proved. In addition, the parties have stipulated that the change orders had an agreed upon and fair and reasonable value of $44,902.

ance of the mortgage proceeds due March under the construction contract. Chemical did not release the funds to Mill but instead assigned the mortgage to HUD and turned over to it undisbursed mortgage proceeds of $100,506.22, an offsite escrow fund of $10,000, and escrow funds of $77,470 attributable to Federal National Mortgage Association ("FNMA") Loan Fees and working capital. Pursuant to the court's memorandum decision of January 25, 1978, March will recover for the percentage holdback from undisbursed mortgage funds and for the offsite work from the escrow fund. March now seeks to recover for construction changes from the remaining undisbursed mortgage proceeds ($54,186.22) and from the FNMA and working capital escrow funds ($77,470).

## I. SOVEREIGN IMMUNITY

 HUD contends that the United States' waiver of sovereign immunity was limited to its commitment to insure a mortgage of $1,338,000.00 of which only $933,352.00 was approved for construction, that it never committed itself to insure or disburse funds for construction changes, and thus that March's claim for the cost of such changes is tantamount to a claim on an implied contract and is barred by the doctrine of sovereign immunity. The court finds that March's claim is not predicated upon an implied contract. As stated in the court's earlier memorandum decision in this case:

"The government's reliance on *Modular Technics Corp. v. South Haven Dev. Fund Co., Inc.*, 403 F.Supp. 204, *aff'd mem.*, 538 F.2d 311 (2d Cir. 1976), is misplaced, for in that case the contractor contended that an implied contract had been created between itself and the FHA by reason of the heavy involvement of the FHA's agents in the project. The Court there reasoned that the FHA agents had no authority to make such a contract and that § 1702 did not waive sovereign immunity for suits based on unauthorized acts. In this case, plaintiff is suing on the legal relationships which arise from authorized actions of the FHA, and

§ 1702 expressly waives sovereign immunity for such claims. *Trans-Bay, supra.*" *Id.* at 7.

The acts of the FHA with regard to construction changes were authorized acts as to which sovereign immunity has been waived under the National Housing Act in 12 U.S.C. § 1702. HUD here relies on the language of its form, No. 2437, purportedly conditioning its approval of the change orders, yet concedes in its brief that it is authorized to disregard the conditions which it establishes. For example, in *F. W. Eversley & Co. v. East N. Y. Non-Profit H. F. D. C.*, 409 F.Supp. 791, 793 n. 2 (S.D.N.Y. 1976), similar language was disregarded due to handwritten interlineations on the change orders indicating that the FHA approved them as covered by the mortgage. In addition, the parties to the instant action have stipulated:

"50. If HUD determines after certification that there will remain funds undisbursed under the mortgage, such funds may be used for payment of allowable costs certified by HUD, one of which may be change orders. In this case, HUD allowed change orders in the amount of $44,902."

Therefore, sovereign immunity does not bar recovery by March.

## II. ESCROW FUNDS

 March claims an equitable lien in the escrow funds deposited for FNMA loan fees and working capital. An equitable lien "is a right, not recognized by law, to have a fund or specific property applied to the payment of a particular debt and is based upon the older equitable doctrine of unjust enrichment. . . . Before a court will impress an equitable lien upon the identifiable fund or property, it must be clear that the parties *intended* that the particular piece of property or fund be so charged. . . ." *American Fidelity Fire Ins. Co. v. Construcciones Werl Inc.*, 407 F.Supp. 164, 183 (D.V.I.1975) (citations omitted). March admits that these funds were designated to be used after final endorsement for specified purposes other than

construction changes but argues that if, as in the instant case, final endorsement of the mortgage does not occur, these funds constitute an identifiable fund intended to defray unpaid construction costs. March relies on, and claims it is a third-party beneficiary pursuant to, Paragraph 9 of the Building Loan Agreement, which provides in pertinent part:

"The Borrower hereby assigns and quitclaims to the Lender all sums unadvanced under the Mortgage and all sums due in escrow conditioned upon the use of said sums *for the completion of the project,* such assignment to become effective only in case of the Borrower's default." (Emphasis supplied.)

That provision obviously does not evince an intent to pay a contractor from these specific funds for a building already completed. Properly construed, and read in its entirety, Paragraph 9 guarantees the actual, physical completion of the project where a default occurs and construction is halted. *See e. g., S. S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 H. D. F. C.,* 460 F.Supp. 593 (S.D.N.Y.1978). March therefore is not entitled to recover from these escrowed funds.

### III. *UNDISBURSED MORTGAGE PROCEEDS*

■ March also claims an equitable lien in undisbursed mortgage proceeds and contends that HUD itself identified those proceeds as the fund and demonstrated its intention, despite the language of its form, to pay March therefrom. The principles set forth in *Trans-Bay Engineers & Builders, Inc. v. Hill,* 179 U.S.App.D.C. 184, 551 F.2d 370 (D.C. Cir. 1976); *Spring Construction Co. v. Harris,* 562 F.2d 933 (4th Cir. 1977); and *F. W. Eversley & Co. v. East N. Y. Non-Profit H. F. D. C., supra,* control our decision. As those cases indicate, FHA's control of the financial arrangements and execution of this project for Mill, a nonprofit and no asset corporation, created the expectation on the part of the contractor

that HUD would make good sums due it. Moreover, the United States, if it obtained by foreclosure a building constructed by March for which it has not fully paid, would be unjustly enriched. The key issue is whether undisbursed mortgage proceeds constitute an identifiable fund intended by the parties to pay for construction changes.

In support of its contention, March points out that HUD (1) continued to approve advances of mortgage proceeds after receiving executed change orders despite the lack of deposits with Chemical [2] and thus essentially waived its deposit requirement provided in its forms, (2) certified as an allowable cost $44,902 for change orders and has stipulated that excess proceeds may be used to pay for such allowable costs, and (3) refused to comply with Mill's request that it transfer money allocated to, but not needed for, taxes to cover change orders, its agent explaining that:

"Reallocation cannot be approved. However, disposition of balance of proceeds will be held in abeyance pending submission and review of Cost Certification and *finalling out.* (Project now 100% completed.) If mortgage is upheld, balance can be disbursed as excess mortgage proceeds on final advance." (Emphasis supplied.)

A waiver of the provisions of HUD's form requiring the necessary funds to be on deposit does not alone indicate an intention to pay for construction changes out of mortgage funds. Nor does certification of change orders as allowable items of cost constitute an allocation of that amount from the mortgage proceeds. However, the relations and dealings of the parties do evince an intent to pay for construction changes from undisbursed mortgage proceeds. Particularly persuasive is HUD's statement that excess mortgage proceeds could be used to pay for changes if the mortgage was upheld, *i. e.,* if the total of allowable costs (including costs attributable to approved changes) equaled or exceeded

---

**2.** March's claim that it was misled by HUD's continued advancement of mortgage proceeds after either its receipt or its approval of change orders is irrelevant because there is no recovery under the Federal Tort Claims Act under such circumstances.

the initially authorized mortgage amount. Had there been a final closing,[3] *i. e.,* "finalling out," March would have been paid out of excess mortgage proceeds. However, "finalling out" never took place due to Mill's default and Chemical's assignment of the mortgage to HUD and thus, despite March's satisfactory completion of construction, it has not been paid. The court finds under these circumstances that there was an equitable lien in favor of March in the undisbursed mortgage proceeds from which it is entitled to recover the sum allowed by HUD for change orders.

Judgment should be entered in accordance with the foregoing and the memorandum-decision and order of January 25, 1978.

SO ORDERED.

### III

### ON PREJUDGMENT INTEREST

By memorandum decision dated January 25, 1978, the court granted summary judgment in favor of March Construction Co., Inc. ("March") on its claim to certain sums due it for the holdback and off-site work and awarded prejudgment interest on those sums. By memorandum decision dated February 16, 1979, the court granted summary judgment in favor of March on its claim to sums due for additional work pursuant to change orders. Prejudgment interest was not awarded as to change orders at that time. March submitted a proposed judgment which included prejudgment interest on all sums due it and defendant Patricia Harris, Secretary of the United States Department of Housing and Urban Development ("HUD") objected.

 Payment of interest is not barred by sovereign immunity. The instant case is distinguishable from *Marcus Garvey Square, Inc. v. Winston Burnett Construction Co.,* 595 F.2d 1126 (9th Cir. 1979), where, because the principal of the mortgage was reduced by the undisbursed

amounts, when the Secretary took assignment of the mortgage, the undisbursed proceeds ceased to exist as a separate identifiable fund. Here, the proceeds are a separate account subject to disbursal at the discretion of the Secretary. March will therefore be paid by HUD from its funds, not from the United States Treasury.

 . However, HUD had no contractual obligation to pay March for additional work pursuant to change orders and thus declined to do so. Its obligation to pay became fixed only when this court determined that there was "an equitable lien in favor of March in undisbursed mortgage proceeds from which it is entitled to recover the sum allowed for change orders." This court has therefore entered a final judgment in accordance with its earlier opinions and in the exercise of its discretion has denied interest on the sums due March under the change orders.

SO ORDERED.

---

**3.** "At final closing the financing arrangements mature into finally endorsed form, and any legal loose ends remaining from the construction project are taken care of." *Trans-Bay*

*Engineers & Builders, Inc. v. Hill,* 179 U.S.App. D.C. 184, 190 n. 10, 551 F.2d 370, 375 n. 10 (D.C. Cir. 1976).