**In re Richard NOVAK, Debtor.**

**No. 804–85622.**

United States Bankruptcy Court,
E.D. New York.

Oct. 17, 2006.

Pittoni, Bonchonsky & Zaino, LLP, by: M. John Pittoni, Esq., Garden City, NY, Attorneys for The Bank of New York.

Law Offices of Michael G. Mc Auliffe, Esq., by: Michael G. Mc Auliffe, Melville, NY, Attorneys for Brendan Bates.

David Cohen, Esq., by: David Cohen, Esq., New York, NY, Attorney for Richard Novak.

## MEMORANDUM DECISION AND ORDER

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court is a dispute between two creditors of the debtor as to the priority of their interests in proceeds arising from the sale of property with each creditor asserting a first priority in a portion of the sale proceeds. In determining this issue, the Court needs to address, among other things, the relative priority of a judgment creditor who docketed a lien against the debtor's interest in such property vis-a-vis the debtor's co-tenant who paid most of the purchase price and expenses relating to such property.

### I. Background.

Richard Novak (the "Debtor") and Brendon Bates ("Bates") had entered into a joint venture on November 22, 2002 with respect to the purchase of a house located

at 123 Duryea Street, Riverhead, New York (the "Property"), along with the adjoining vacant lot (the "Lot") for $212,500.00 (the "Purchase Price"). The deed for the Property was put in the names of the Debtor and Bates as tenants-in-common while the deed for the Lot was put in Bates' name, only for convenience, to avoid having the lots merged by common ownership. At closing, Bates paid $191,250 of the Purchase Price while the Debtor invested approximately $20,000. In addition, at the closing, Bates paid the title closing fees of $1,455.00 and legal fees of approximately $1,045.00.

After the closing, the Debtor and Bates entered into an agreement on November 28, 2002 (the "November 28, 2002 Agreement") memorializing the details of the purchase of the Property and the Lot as follow:

> The cost of the property was listed as $212,500. Bates and the Debtor each paid $21,500 with a balance due of $170,500. In addition, closing costs consisted of $1,012.53 in legal fees and $1,455.00 of title closing fees, which totaled $2,468. Bates paid the balance of the Purchase Price at closing, in addition to the closing costs, which totaled $172,468. The November 28, 2002 Agreement acknowledged that the Debtor owed Bates $86,234 (or 50% of the $172,468) relating to the purchase of the Property and Lot.

Subsequent to closing, Bates expended $16,273.62 related to real estate taxes and $1,297.00 related to insurance on the Property and Lot.

Bates did not file or record any security interest or lien claim as to either the Property or Lot.

The Debtor and Bates apparently had numerous disagreements regarding the Property and Lot. On May 15, 2003, the Debtor and Bates executed a second agreement (the "May 15, 2003 Agreement") stating that the Property and Lot will be sold for $290,000 (with $70,000 being allocated to the Lot and $220,000 being allocated to the Property). In addition, under the May 15, 2003 Agreement, the parties recharacterized the amount of each party's contribution to the Purchase Price and the nature of the Debtor's obligation to Bates with respect to the monies advanced on the Debtor's behalf with respect to the Purchase Price. The Debtor and Bates agreed that monies arising from the sale of the Property and Lot will be refunded to both parties based upon proof of monies paid with the Debtor being entitled to $23,000 and Bates being entitled to $197,000. Both parties would be entitled to receive interest at 6% per annum with respect to the amounts owing. After both parties have been reimbursed, they agreed to split any profits from the sale equally.

On December 10, 2003, The Bank of New York ("BONY") obtained a judgment against the Debtor in the amount of $623,747.80. The judgment was docketed and recorded with the Suffolk County Clerk on March 9, 2004 and became a lien on the Debtor's interest in the Property.

The Debtor filed for Chapter 11 relief on September 2, 2004. At the time of the bankruptcy filing, the Debtor was residing at the Property. The Debtor's bankruptcy case was subsequently converted to a case under Chapter 7 on May 24, 2006 and a Chapter 7 Trustee was appointed in this case. BONY filed a proof of claim as a secured creditor in the amount of $670,528.90. Bates filed two proofs of claim, one for a secured claim in the amount of $237,005.73 with respect to the November 28, 2002 Agreement and the May 15, 2003 Agreement, and the other for an unsecured claim unrelated to the purchase of the Property and Lot.

On June 6, 2005, the Court authorized the sale of the Property and Lot for

$340,000 pursuant to 11 U.S.C. § 363 with any liens relating to the Property and Lot to attach to the proceeds. On November 11, 2005, before the Debtor's Chapter 11 case was converted to a Chapter 7 case, the Debtor brought a motion seeking to modify and/or reduce various claims filed against the bankruptcy estate, including the claims filed by BONY and Bates. The Debtor argued that BONY's claim was partially unsecured because the Debtor's 50% interest in the Property totaled no more than $140,000. The $140,000 excludes the Debtor's estimate of $60,000 of the proceeds attributable to the sale of the Lot. The exclusion is apparently on the basis that the Debtor's name is not listed on the deed to the Lot. Therefore, the Debtor asserts that BONY's secured lien does not attach to any interest the Debtor may have in the proceeds relating to the sale of the Lot. Once the Debtor's claim of a $50,000 homestead exemption is taken into account, the Debtor alleges that BONY's secured claim would be $90,000 with the balance of the amount claimed being an unsecured claim.

With respect to Bates' secured claim, the Debtor claims that pursuant to the May 15, 2003 Agreement, the Debtor had a 50% interest in the Property and Lot and therefore Bates' interest in the proceeds of sale is limited to $170,000 (i.e., 50% of the sales price). The Debtor argues that Bates never obtained any security interest or mortgage for the funds lent to the Debtor with respect to the Property and Lot, and therefore any claim by Bates for any amount in excess of his 50% interest should be considered an unsecured claim as it was not secured by any lien under 11 U.S.C. § 506(a). Accordingly, the Debtor alleges that Bates only has a secured claim for Bates' half of the sale proceeds and any claim with respect to loans or advances of any other amounts given to the Debtor must be deemed unsecured. In addition, the Debtor claims that Bates'

secured claim should be offset by various expenses incurred by the Debtor relating to the joint venture and monies advanced and expenses incurred in connection with another joint venture regarding a separate parcel of investment property. There was no evidence provided as to any other investment or any other investment property.

In opposing the Debtor's objection to his claims, Bates argues that he is entitled to more than 50% of the proceeds resulting from sale of the Property and Lot based upon the May 15, 2003 Agreement, which provides that he is entitled to recover monies he contributed toward the Purchase Price, including 6% interest on such contribution, and any monies expended with respect to the Property and Lot after the closing, before the Debtor's bankruptcy estate is entitled to any claim with respect to 50% of the profits arising from the sale of the Property and Lot. Accordingly, Bates argues that his interest in the proceeds is not subject to the jurisdiction of this Court nor the judgment lien asserted by BONY.

BONY in turn argues that 1) based upon the November 28, 2002 Agreement and the May 15, 2003 Agreement, Bates only has a 50% interest in the Property, 2) Bates' claim with respect to the amounts he contributed to the Purchase Price on behalf of the Debtor are unsecured because (a) there is no security agreement, no mortgage, Uniform Commercial Code filing or any other filed instrument to reflect any security for the amounts claimed and (b) Bates has not obtained any judgment against the Debtor or filed any lien or produced any kind of document which gives a lien on the Property or the proceeds of sale, 3) the Debtor is not entitled to a homestead exemption as the Property was purchased as investment property, and 4) of the $340,000 sale proceeds, after

deducting approximately $70,000 estimated to be the value of the Lot with respect to which the deed is in Bates' name only, the remaining sales proceeds would be $270,000 of which the Debtor's bankruptcy estate would be entitled to $135,000 (or 50%) as a tenant in common. Because BONY is the only creditor with a recorded lien on the Property and such lien attached to the Property more than 5 months before the commencement of the Debtor's bankruptcy case, BONY argues that it is entitled to the bankruptcy estate's entire interest in the $135,000. Moreover, BONY argues that any equitable argument that Bates may have with respect to the amounts contributed would fall short as BONY concedes that Bates would be entitled to $70,000 with respect to the Lot and $135,000 with respect to Bates' half interest in the Property, for an aggregate sum of $205,000 which would reimburse Bates for the $197,000 he contributed toward the Purchase Price.

The Chapter 7 Trustee has reviewed the Debtor's objection to the secured claims of BONY and Bates to the proceeds of the sale of the Property and Lot and determined that the bankruptcy estate's interest in the sale proceeds will be nominal, if any, once the claims of BONY and Bates against the proceeds are resolved. Accordingly, the Chapter 7 Trustee was authorized to abandon the bankruptcy estate's interest in the sale proceeds and the proceeds are currently being held in an interest-bearing account pending further direction of the Court.[1]

## II. Jurisdiction.

With respect to the determination of creditors' respective interest in proceeds arising from the sale of the Debtor's property that was part of the Debtor's bankruptcy estate, this Court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K) and (O) and 11 U.S.C. § 502(b).

## III. Facts.

The facts as stated above are not in dispute. The dispute pertains to how the proceeds of sale are to be distributed.

## IV. Discussion

### A. General.

■ When parties purchase property as tenants in common, there is a presumption that the parties hold an equal interest in such property unless the deed specifies otherwise. *In re McConnell,* 197 F. 438, 441 (N.D.N.Y.1912). Where the deed is silent as to the interest of each party, the presumption of equal interest *as between the parties* may be overcome by the presumption arising from the amount of contribution to the purchase price. *Id. (emphasis added); Moran v. Thomas,* 280 A.D. 1037, 117 N.Y.S.2d 190 (N.Y.App.Div. 1952) (in determining the interest of two tenants in common to property where no liens or secured claims against one of the co-tenants were alleged, the court required one of the co-tenants to account for 50% of the payments made by the other co-tenant toward the purchase price, mortgage payments and taxes where the first co-tenant

---

1. This Memorandum Decision and Order only focuses on the secured claims of BONY and Bates against the proceeds arising from the sale of the Property and Lot. The Debtor's objection to Bates' unsecured claim (Claim No. 10) is still outstanding and would need to be determined pursuant to an evidentiary hearing. With respect to the Debtor's objection to the claim (Claim No. 3) of the United States Internal Revenue Service (the "IRS"), the IRS has not submitted any opposition to the Debtor's motion but the Debtor has not continued its objection to such claim on a formal basis nor has an order been entered with respect to such claim. The Debtor's counsel or the Chapter 7 Trustee will need to address the status of the Debtor's objection to the IRS's claim.

did not make any contribution toward such payments and found that such obligation would constitute a lien against the first co-tenant's interest in the proceeds arising from the sale of such property).

In *In re McConnell*, 197 F. 438 (N.D.N.Y.1912), the District Court for the Northern District of New York dealt with the issue of determining the interests of two parties in investment property held as tenants in common where the deed was silent as to the percentage of ownership interest of the parties but an oral arrange-ment existed. In *McConnell*, the debtor did not have the necessary funds in the amount of $1,400 to purchase a piece of property and arranged with his cousin, Eliza Carr ("Carr"), to furnish the neces-sary funds in return for a note for 50% of the purchase price payable with interest. The deed was recorded in the name of the debtor and Carr. The parties, however, verbally agreed that when the property was sold, that the debtor and Carr will share in the profits from the sale after Carr had recovered the $1,400 used to purchase the property. Carr never de-manded a mortgage as a security interest. In that case the District Court found that Carr had an interest in the real property and the sales proceeds equal to the pur-chase price of the property plus interest on the debtor's note before the debtor was to have anything and that there was nothing inequitable about giving the other party her money from the proceeds of sale as she had furnished the entire consideration for the purchase of the property. Despite the deed being silent as to the respective interests of the debtor and Carr, the court held that in enforcing the oral agreement made by the parties, Carr was entitled to the return of her contribution to the pur-chase price which was more than 50% of proceeds of sale with the balance of the proceeds to be divided equally between the debtor and Carr under their oral arrange-ment. The above cases refer to situations

where the only parties in interest are the parties themselves. There is no interven-ing party in these cases who asserts a judicial lien.

While a tenant in common may have an interest in property in accordance with the percentage of his or her contribu-tion to the purchase price despite what is recorded in the deed, the rights of such tenant in common with respect to such interest are not without limitation. A de-termination of the interests of tenants in common in a property cannot be made in isolation without considering the effect of the parties' undisclosed arrangement on unsuspecting third parties who secure a claim against one of the co-tenants with respect to such property. It is significant that the court in *McConnell* noted throughout its decision that there were no bona fide purchaser for value nor liens against the property and therefore, no general creditors were harmed by the fail-ure of the deed to disclose the actual inter-ests of the tenants in common in such property as the general creditors did not have a lien or claim superior to that of Carr. *Id.*, 197 F. at 442. If a creditor with a lien was present and the superiority of that claim over Carr's interest in the pro-ceeds was established, it appears that the court would have decided differently.

In the case before this Court, the deeds do not disclose that the Debtor and Bates have an unequal interest in the Property or that the Debtor has an inter-est in the Lot. While the May 15, 2003 Agreement evidences an arrangement as to the unequal division of proceeds arising from the sale of the Property and Lot between themselves, such agreement was not recorded nor did Bates demand a mortgage from the Debtor and have such mortgage recorded. Moreover, subse-quent to the entry of the May 15, 2003 Agreement, BONY docketed a judgment lien against the Debtor's interest in the

Property and unlike *McConnell,* BONY's rights as a judgment lien creditor would be affected by the undisclosed arrangement between the Debtor and Bates. Therefore, consideration needs to be given to BONY's judgment lien when determining the actual interests of the Debtor and Bates in the sale proceeds vis-a-vis third parties. The finding of the court in *McConnell* with respect to the interest of tenants-in-common in property is inapposite when dealing with the issue of the rights of the tenants-in-common vis-a-vis third party lien creditors in such property. Accordingly, the Court cannot find that Bates had more than a 50% interest in the Property and Lot based upon the May 15, 2003 Agreement alone.

### B. Equitable Lien Argument.

■ In the absence of a filing under the New York Uniform Commercial Code of a mortgage or other record of Bates' interest in the Property beyond the 50% indicated on the deed, the most that Bates would have is an equitable lien against the bankruptcy estate's portion of the proceeds from the sale of the Property. In order to have an equitable lien there must be an agreement, express or implied, that there will be a lien on specific property. 5–45 Warren's Weed New York Real Property § 45.03. *See also, In re Tri-Way Security and Escort Service, Inc.,* 114 B.R. 24, 26 (Bankr.E.D.N.Y.1990), *quoting American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 183 (D.Vi.1975) (an equitable lien is "a right, not recognized by law, to have a fund or specific property applied to the payment of a particular debt.") An intention to create such a charge must clearly appear from the language and the attended circumstances. "Strict proof of such intention is required. To make such a lien binding upon a third party, it is necessary that its existence as a lien be fully proven." *Conkling v. First National Bank of Olean,* 286 A.D. 537, 541, 145 N.Y.S.2d 682, 685 (N.Y.A.D.4 Dept.1955) (*quoting Pennsylvania Oil Products Refining Co. v. Willrock Producing Co.,* 267 N.Y. 427, 434–435, 196 N.E. 385 (N.Y.1935)).

■ Around the time the deed was conveyed, the initial agreement between the Debtor and Bates as set forth in the November 28, 2002 Agreement stated what each party contributed and that Novak owes Bates 50% of the balance of the Purchase Price. This Agreement indicates that all Bates had was an unsecured interest against the Debtor for monies advanced on his behalf. However, the May 15, 2003 Agreement restructured the arrangement between Bates and the Debtor and the parties clearly intended that proceeds of sale from the Property and Lot would be refunded to them based upon their respective contributions to initial Purchase Price, plus interest, before any profits from the sale of the Property and Lot would be divided equally. Therefore, the May 15, 2003 Agreement evidences an equitable lien in favor of Bates to the extent of his advancement of funds to the Purchase Price on behalf of the Debtor, plus interest with respect to such advance, against any sale proceeds and such lien came into existence before BONY's judgment lien.[2]

---

**2.** With respect to the $16,273.62 of real estate taxes and $1,297 of insurance costs paid by Bates with respect to the Property subsequent to the closing date, the payment of expenses relating to the property post-closing were not addressed in either the November 28, 2002 Agreement nor the May 15, 2003 Agreement. Therefore, there is nothing in the agreements that indicates what the parties' respective share of expenses would be and, assuming that post-closing expenses are assumed equally, there is nothing indicating that the parties intended that the Debtor's share of the post-closing expenses, if any, would be paid from the proceeds of sale of the property. As such,

■ However, in determining the priority of Bates' equitable lien against the sale proceeds and BONY's judgment lien,

> "[T]he rules that the lien which is prior in time is prior in right does not apply if the junior lien is legal and was acquired without notice of a prior equitable lien, since in accordance with the equitable maxim that equity follows the law, legal liens are favored against mere equitable interests. Thus, a recorded lien will prevail over the subsequently recorded equitable lien since the public policy behind the requirement for prompt recording would be hindered if the equitable lien were to prevail."

75 N.Y. Jur.2d Liens § 49 (2000 & Supp. 2006). *See also, Marine Midland Bank, N.A. v. A & M Warehouse*, 118 Misc.2d 555, 461 N.Y.S.2d 200 (N.Y.Sup.Ct.1983) (finding that a judgment creditor had only an equitable lien in the form of an undocketed judgment and was not entitled to priority over another judgment lien creditor where the former obtained a judgment prior in time but failed to record the judgment before the latter's judgment was docketed). *cf. Cherno v. Dutch American Mercantile Corp.*, 353 F.2d 147 (2d Cir. 1965) (stating that had there existed an equitable lien on chattel, New York state law would have deferred the priority of such lien to subsequent legal liens of judgment creditors). As Bates' equitable lien is unrecorded, BONY's recorded judgment lien has priority over Bates' equitable lien

in the proceeds arising from the sale of the Property as created by the May 15, 2003 Agreement. Accordingly, BONY is entitled to priority to the extent of its judgment lien against the Debtor with respect to 50% of the proceeds that are attributable to the sale of the Property, which represents the Debtor's interest in such Property.

■ Regarding the proceeds attributable to the sale of the Lot, because the deed to the Lot is recorded solely in Bates' name, the Debtor, as conceded by BONY, does not have any interest in the sale proceeds attributable to the Lot vis-a-vis any third party creditor of the Debtor. Accordingly, Bates would be entitled to the portion of the proceeds attributable to the sale of the Lot.

■ While Bates has also raised an argument for constructive trust with respect to the proceeds, the Court finds such argument to be inapplicable as a constructive trust is an equitable remedy that arises when a fiduciary gains something for himself, by fraud or other action on his part, that he would not have gotten otherwise. There is no allegation that the Debtor acted as a fiduciary on behalf of Bates nor is there any evidence of fraud or wrong doing by the Debtor involved in connection with respect to the Debtor's or Bates' interest in the Property or Lot.

## C. Debtor's Homestead Exemption.

■ On the Debtor's Schedule C, the Debtor claimed, *inter alia*, a $10,000 homestead exemption [3] with respect to the

---

any legal liens with respect to the Debtor's interest in the Property and Lot (i.e., BONY's judgment lien) would be superior to any interest Bates may have against the Debtor with respect to such expenses. *See Conkling v. First National Bank of Olean*, 286 A.D. at 541, 145 N.Y.S.2d at 686 (N.Y.App.Div.1955) (finding that no equitable lien existed in favor of a mortgagor's co-tenants with respect to an oil development lease in the absence of any arrangement for reimbursement against the mortgagor's share of profits in such oil lease

where the mortgagor breached his duty to pay for his share of expenses and that the mortgagee who recorded a mortgage against the mortgagor's interest in the profits of such oil lease had priority over the other co-tenants with respect to such claim for reimbursement).

**3.** CPLR § 5206(a) was amended to provide that effective as of August 30, 2005, the homestead exemption would be increased from $10,000 to $50,000. Because the Debtor's bankruptcy petition was filed on September 2,

Property under 11 U.S.C. § 522(b) and New York Civil Practice Law & Rules § 5206(a) ("CPLR § 5206").[4] Pursuant to 11 U.S.C. § 522(*l*) and Rule 4003(b) of the Federal Rules of Bankruptcy Procedure ("FRBP"), unless a party in interest objects to the exemption claimed under Schedule C within 30 days after the meeting of creditors held under 11 U.S.C. § 341(a) is concluded, the property claimed as exempt on such schedule is exempt. The objecting party, if any, has the burden of proving that the exemption is not properly claimed. FRBP 4003(c). Because no objection has been filed with respect to the Debtor's claim of a homestead exemption within the time limits set forth under FRBP 4003(b), the Debtor is entitled to $10,000 from the 50% of the proceeds arising from the sale of the Property that represents his interest in the Property before the remainder of such proceeds is distributed to BONY.

## CONCLUSION

Based upon the foregoing, the Debtor's objections to BONY's claim and Bates' secured claim are denied. Bates' secured claim shall be allowed in the amount of $205,000, which represents the $70,000 attributable to the value of the Lot pursuant to the May 15, 2003 Agreement and $135,000 attributable to Bates' interest in the Property as a 50% co-tenant. Bates will have an unsecured claim with respect to the reimbursement of the Debtor's share of any unpaid expenses relating to the Property and the Lot to the extent such claim for reimbursement is supported. BONY's secured claim with re-

2004, the Debtor's homestead exemption is limited to $10,000.

4. CPLR § 5206(a), prior to the 2005 amendments, provides:

Exemption of homestead. Property of one of the following types, not exceeding ten thousand dollars in value above liens and encum-

spect to its judgment lien shall be allowed in the amount of $125,000, which represents the Debtor's 50% interest in the proceeds relating to the sale of the Property less the Debtor's $10,000 homestead exemption, and BONY shall be allowed an unsecured claim in the amount of $545,528.90 for the balance of its judgment lien.

SO ORDERED.

brances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:

(1) a lot of land with a dwelling thereon. . . .